### Western Union Telegraph Company v. A. D. McConnico.

Decided January 11, 1902.

**1.—Telegraph Company—Office Hours—Abrogating Rule.**

A rule of the telegraph company fixing certain hours on Sunday for the receipt and delivery of messages is not abrogated by virtue of the fact that on a few occasions and merely as an accommodation messages had been delivered out of such business hours.

**2.—Same—Negligent Delay—Fact Case.**

See evidence held not to warrant a verdict against a telegraph company for delay in delivering a death message, because not showing that plaintiff could have gotten out on a train that day had the message been promptly delivered.

**3.—Charge—Burden of Proof.**

A charge on the burden of proof should be given, if requested; but where the charge requested on the subject was included in an instruction erroneous in other respects, it was properly refused.

**4.—Telegraph Company—Delay in Delivering Message.**

Upon an issue as to whether a telegraph company was guilty of negligent delay in the delivery of a message, the time required to copy, number, address, and envelop the message should be computed in its favor.

**5.—Same—Office Hours—Presumption.**

A telegraph agent at New Orleans is not in law presumed to know the company's Sunday office hours at Bryan, Texas, and in accepting a message for transmission the company does not thereby undertake to deliver it regardless of office hours, in the absence of a specific agreement to that effect.

Appeal from Brazos. Tried below before Hon. J. C. Scott.

*A. H. Jayne,* for appellant.

*Lamar Bethea, V. B. Hudson,* and *Doremus & Butler,* for appellee.

Gill, Associate Justice.—This suit was brought by appellee to recover of appellant damages for negligent failure of appellant to make timely delivery to him of a telegraph message announcing the death of his mother at New Orleans, by reason of which delay he was deprived of the opportunity to attend her funeral. A jury trial resulted in a

verdict and judgment for plaintiff for $1000, from which the telegraph company has appealed.

The defense urged by defendant was that it had established as reasonable office hours for Sunday, at the place of delivery, from 8 to 10 o'clock a. m. and from 4 to 6 o'clock p. m. That between the hours of 10 a. m. and 4 p. m. the telegraph office was not kept open for public business and that during those hours the messenger boy was discharged from duty. That the message in question was received at 1:35 p. m. on Sunday, the 19th day of November, 1899, and was delivered within fifteen or twenty minutes after 4 o'clock. It denied generally the allegations of negligence.

The facts are as follows: A. D. McConnico, the plaintiff, was a banker residing at Bryan, Texas. His home was between 1200 and 2000 feet from the telegraph office, and he had lived there for many years. His mother, sister, and C. E. Rice, his brother-in-law, lived in New Orleans. On the morning of November 19, 1899, C. E. Rice sent to plaintiff at Bryan, Texas, the following telegram over the wires of the defendant: "New Orleans, La., November 19, 1899.—To A. D. McConnico, Bryan, Texas: Ma died this morning at four o'clock. Chas. E. Rice." The person mentioned in the message was the mother of plaintiff, had died at 4 o'clock on the morning of the date named, and was buried the following day at New Orleans. The only train on which plaintiff could have taken passage in order to reach New Orleans in time for the funeral was due to arrive at Bryan at 4:03 p. m. and usually stopped at that point from three to five minutes. On the date in question, which was Sunday, the train was late and actually arrived at Bryan at 4:12 p. m. and left at between 4:15 and 4:20. The message was taken off the wires at Bryan at 1:35 p. m., but was not delivered until about 4:20, at which time the train had left Bryan and was about a mile from the depot. W. W. Harris was the telegraph operator for defendant at Bryan on the day in question and had been for a great many years. He was also the agent and telegraph operator for the Houston & Texas Central Railroad Company at that point, the telegraph instruments of both companies being located in the same room. The telegraph company had established office hours for Sunday at from 8 to 10 o'clock a. m. and from 4 to 6 o'clock p. m. From 10 to 4 o'clock on Sundays Harris was in the employ of the railroad company, and the rules of defendant did not require that he take or receive messages between the hours named. The messenger whose duty it was to deliver messages had been discharged at 10 o'clock a. m. on the day in question and was not required to report for duty again until 4 o'clock p. m.

Whit Doremus, who had been taught telegraphy by Harris, but who was not in the employment of either the railway or telegraph company, had on the day in question relieved Harris and was working for the railway company in his stead. He it was who while working at the railway instrument heard the call from the telegraph instrument and voluntarily took the message in question from the wire and hung it on

the hook for delivery when the messenger came on duty. Realizing the importance of the message and being acquainted with McConnico he went down stairs to telephone the message to him, but the room in which the telephone was situated was locked. He had no one by whom he could send the message, and as he could not abandon his railroad duties he awaited the coming of Harris. The latter arrived at the office between 3 and 3:15 o'clock, and seeing the message on the hook requested Doremus to see some of plaintiff's family and inform them of the message or send some one with it to the house. Doremus did not see anyone, and having business of his own, did not himself deliver it. Harris could not leave the office, because a freight and the passenger train were ordered to meet at Bryan, but he also tried to 'phone or send the message, but failed because he could not get to the 'phone, and could not find anyone to send it by.

The messenger boy whose duty it was to return to the office and report for duty at 4 o'clock was playing ball about one-fourth of a mile from the office, and hearing the train whistle he mounted his pony and arrived at the depot just as the train pulled in. This was twelve minutes later than he should have resumed his duties. He at once went to the office, numbered and copied the message, inclosed it in an envelope, addressed it and delivered it to plaintiff by 4:20 or perhaps a little earlier. It took him three or four minutes to number, copy, envelope, and address the message.

Plaintiff testified that had he received the message in time he would have taken the 4:03 train and attended his mother's funeral. He also stated that had the boy delivered the message to him within five or six minutes of the departure of the train he could have caught the train, which was late, bought a ticket on credit, and gone. That he would not have stopped to make any preparations for his journey. That the defendant had established office hours for Sunday at Bryan as alleged is absolutely undisputed, as is also the fact that it did not maintain a force of messengers for the delivery of messages during the hours named.

Plaintiff, conceding that proof of office hours as alleged would excuse the company between the hours of 10 to 4 o'clock, sought to avoid the force of these facts by attempting to show that the defendant by a systematic disregard of the rule as to office hours had abrogated it and was now estopped to urge it as a defense. The evidence affecting this issue is substantially as follows: Plaintiff stated he had received messages between 10 and 4 o'clock on Sunday, but did not know when nor how many. Witness Lee stated he had received messages between those hours and had sent many; it may have been done for him as matter of accommodation. Witness Ettle had received messages between those hours, but could not tell how many or from whom. General H. B. Stoddard, who was engaged in the business of buying cotton, testified that on one or two occasions he had sent and received messages between those hours; he had been in Bryan many years; he did not know whether or not it was a personal favor to him. Harris stated that the

company had established such a rule years before and he had recognized and maintained it; that he discharged the messenger boy between those hours and had no means of delivering messages during that time. He frankly admitted that many times he had found means to deliver important messages between those hours, but it was for the accommodation of the addressee and not because the rules required it. That he had the right to refuse to take them off the wires between those hours, but frequently did so and hung them on the hook, so that they could be more speedily delivered after 4 o'clock. That he had frequently received messages for transmission between those hours, but always subject to delay until 4 o'clock. He further stated that urgent telegrams were sometimes delivered out of office hours for accommodation, and that he would have delivered this one if the means had been at hand. That he could not recall a year in all his service with the company when he had not on some Sunday delivered messages under the circumstances named.

To the same effect was the testimony of Doremus. Charles Adams, the messenger boy of defendant, when called by plaintiff, testified that he was not on duty between 10 and 4 o'clock. That from what he had heard no messages were supposed to be taken off the wires between 10 and 4 on Sunday, but it was sometimes done and they were hung on the hook for delivery after 4 o'clock. He stated that he had on occasions delivered messages between 10 and 4 on Sundays and had seen Harris receive for transmission on Sundays.

Under an appropriate assignment of error it is contended by appellant that the evidence shows without contradiction that office hours had been established as alleged, and that the evidence is insufficient to sustain the verdict on the ground that they had been abrogated by usage. It clearly appears from a fair analysis of the testimony of plaintiff's witnesses on this issue that it is not inconsistent with the testimony of Harris and Doremus. It in no sense disputes the statement that such a rule had been established, and the messenger's statement that he was not on duty between the hours named corroborates the testimony of Harris and Doremus and goes far to sustain the contention of appellant. Indeed, the character of effort made on the part of Harris and Doremus to deliver the message before 4 o'clock makes it plain that both were conscious of the existence of the rule and felt that they were under no legal duty to deliver it out of office hours. No suspicion is cast upon the truth of the testimony of either of these witnesses.

The testimony of plaintiff's witnesses on this issue neither add to nor take from the force of Harris' statement, and leave the case in the same attitude upon this issue as if no one but he had testified. He states that notwithstanding the rule he has frequently procured the delivery of messages between those hours as a matter of accommodation and not because his duty required it. Plaintiff and his witnesses, the recipients of this kindness, not extended by the defendant through its paid employes, but by them as individuals, without extra charge, have testified

to no more. They do not claim to know what the custom of defendant was in this respect, but merely relate isolated instances extending through a period of many years. They do not claim to know what motive prompted the delivery or receipt of the messages they mention, and are unable to state whether or not they were indebted to the personal kindness of the agent. This agent had served the defendant at that point for the greater part of twenty years, was generally acquainted in the town, and it was but natural and human that when messages of moment to the purse or feelings of his friends and acquaintances came to his hands out of office hours he should make some effort to deliver them regardless of the rules of his master. According to both his and the plaintiff's statement they were acquaintances and friends, and he made some effort to deliver the message notwithstanding the rules and notwithstanding the fact that the company had furnished him no messenger between 10 and 4 o'clock. He may not have done all he ought to have done as an individual, but if the rule was actually in existence the law did not require of him anything.

If the rule was existent and his employment did not require an effort on his part to deliver between those hours, it would be a wrong to defendant and a wrong to the public to mulct defendant in damages because its agents had at times rendered a greater service to its patrons than the law required. To hold that the voluntary acts of the agent, as shown by the proof, rendered under circumstances which have not misled plaintiff to his injury, should amount to an abrogation of the reasonable rules of the defendant established for the orderly conduct of its business, would force defendant to forbid its servants, on pain of dismissal, to deliver messages in any case except during office hours. It would be to say the agents of defendant may respond to the ordinary dictates of human kindness only at the peril of their master.

The law permits telegraph companies to establish and maintain reasonable office hours. Their employes need rest and refreshment as do the employes of other concerns. Such companies are not required to employ more than one shift of men unless the business justifies it. Thus it has been held that telegraph companies will not be required to maintain an office at a station on their line where it can be operated only at a loss. It is reasoned that such a course would unduly increase the costs of messages to the general public, and the interest of the small neighborhood to be benefited by the maintenance of the small office must yield to the interest of the general public.

We are of opinion the defendant showed without dispute that office hours had been established as alleged. The reasonableness of the rule is not questioned, and we are of opinion that the evidence by which it was sought to show the abrogation of the rule by usage and custom is insufficient to support the verdict on that ground.

We are also of opinion that the verdict can not be sustained on the ground that the company was negligent in failing to deliver the message early enough after 4 p. m. to enable the plaintiff to catch a train

which, if it had been on time, he could in no event have caught, and which the evidence shows he could have used, if at all, only by extraordinary haste and the purchase of a ticket on credit. Extraordinary haste on the part of the messenger (even if he had resumed his duties on time), the readiness of plaintiff to undertake a journey to New Orleans without preparation, the lateness of the train and his ability to procure a ticket without money, must have all concurred to enable plaintiff to attend the funeral.

The verdict can not be reasonably accounted for on any other ground than that the jury concluded the rule as to office hours had been abrogated, and as we have shown the evidence is insufficient upon this point.

Appellant further complains of the failure of the trial court to charge upon the burden of proof. Such a charge should have been given if properly requested, but the charge requested upon the subject was included in a charge erroneous in other respects.

The evidence showed that it took from three to five minutes to copy, number, register, envelope, and address the message before undertaking its delivery and that this was a universal custom of the telegraph companies. The appellant requested the court to direct the jury in determining the question of negligence occurring after 4 o'clock not to compute the time consumed in complying with this regulation. We think the charge should not have been given in the form requested. The time reasonably necessary for the preparation of the message for delivery should have been excluded from the computation, and the court should so charge.

The court should have given the requested instruction to the effect that the agent at New Orleans was not presumed in law to know the office hours at Bryan. That in accepting it for transmission the defendant did not thereby undertake to deliver regardless of office hours in the absence of a specific agreement to that effect, and that under the facts the message was sent subject to established office hours, but in view of the general charge of the court and special instructions given we are inclined to think this was not error requiring a reversal of the judgment if the facts otherwise supported it.

The remaining assignments present no error and need not be considered in detail. For the reasons given the judgment is reversed and the cause remanded.

*Reversed and remanded.*