KERNODLE v. TELEGRAPH CO.

(Filed May 22, 1906).

*Telegraphs—Joint Agent with Railroad—Delivery—Reasonable Time—Question for Jury— Evidence—Proximate Cause—Mental Anguish.*

1. It is the duty of a telegraph company to provide proper means for the delivery of messages and the transaction of its business, and if it employs an agent on joint account with a railroad, it must abide the consequences of a conflict of duty upon the part of the agent.

2. The law exacts a greater degree of diligence in the transmission and delivery of a telegram relating to sickness than it does to an ordinary message, and what would be reasonable time under some circumstances would not be under others.

3. In an action against a telegraph company for alleged negligence in the delivery of a telegram, the question whether it was delivered in a reasonable time should be determined by the jury under proper instructions, and the court erred in deciding, as a matter of law, that a delay in the delivery of the telegram of seventeen minutes after its receipt, was unreasonable under the facts of this case.

4. Where the gravamen of plaintiff's complaint against a telegraph company is that if the telegram had been delivered earlier, he would and could have reached home earlier and spent more hours with his wife before she died, it is incumbent on the plaintiff not only to show that there was negligence in the delivery, but that this negligence caused the mental suffering, and where the defendant's evidence was to the effect that plaintiff could not have reached home earlier than he did, even if the telegram had been delivered promptly, the court erred in charging the jury "if you believe the testimony of the defendant, it is your duty to answer the first issue 'yes.'"

KERNODLE v. TELEGRAPH CO.

5. In an action against a telegraph company for negligent delivery of
a telegram announcing the sickness of plaintiff's wife at home,
where, what the plaintiff *would* have done had he received the
telegram in time to continue his journey is not admitted, it is a
matter for the jury to determine.

CLARK, C. J., dissenting.

ACTION by C. R. Kernodle against the Western Union Tel-
egraph Company, heard by *Judge R. B. Peebles* and a jury, at
the May Term, 1905, of the Superior Court of ALAMANCE.

Action to recover damages for negligence in failing to de-
liver the following telegram: "D. W. Kernodle, Bethel, N.
C. Ida is sick. Please let Charlie know at once," signed
G. R. Danniely. There was evidence tending to prove that
the plaintiff arrived at Bethel on the train from the east at
9:20 a. m., and that the telegram was delivered to his brother
two minutes after the train left. There is no allegation or
charge of negligence in the transmission of the message. It
was received at Bethel at 9:05 a. m. From the judgment
rendered, the defendant appealed.

*W. H. Carroll* and *Brooks & Thomson* for the plaintiff.
*King & Kimball* and *F. H. Busbee & Son* for the de-
fendant.

BROWN, J. 1. We think His Honor erred in practically
directing the jury that in any view of the evidence they
should render a verdict against the defendant upon the issue
of negligence. While there may be evidence tending to prove
negligence and sufficient for that purpose to be submitted to
the jury, it is not such a case as warranted the learned judge
below in taking the question from the jury and deciding it
himself. It is admitted there was no delay in the transmis-
sion of the telegram. The negligence alleged is in the delay
in its delivery to D. W. Kernodle, the sendee, after its re-
ceipt by the operator at Bethel. We concur in what is said

by counsel in reference to the duty of the defendant to pro-
vide proper means for the delivery of messages and the trans-
action of its business, and that if the defendant employs an
agent on joint account with the railroad company, it must
abide the consequences of a conflict of duty upon the part of
the agent.    Notwithstanding the law gives the defendant a
reasonable time within which to deliver a message *(Tel. Co.
v. McConnico* (Texas), 66 S. W., 592; *Tel. Co. v. Stein-
benger* (Ky.), 54 S. W., 829), the law exacts a greater degree
of diligence in the transmission and delivery of a telegram,
like the one in this case, than it does an ordinary message,
and what would be reasonable time under some circumstances
would not be under others.    So that the question is, what
was a reasonable time for the delivery of this particular tele-
gram.  This telegram was in the sendee's hands in 17 minutes
after its receipt.  It was received at 9:05 a. m., fifteen min-
utes before the train arrived, and was delivered two minutes
after it left.  In order to have benefited Chas R. Kernodle,
it must have been delivered in 15 minutes after its receipt.
It required at least three minutes to copy the message in the
office, number and enter it on the delivery book, which left
only 12 minutes for its delivery before the arrival of the
train.  In *Telegraph Co. v. McConnico, supra,* it is held that
the failure of the agent to deliver a message within 20 min-
utes after the opening time on Sunday, was not negligence,
although had the message been immediately delivered, the
addressee could have caught a train, enabling him to reach
his destination in time for the funeral.    Under the circum-
stances we cannot hold as a matter of law that 12 minutes'
delay was unreasonable.  It should have been submitted to
the sound discretion of the jury under appropriate instruc-
tions.    The judge rested his ruling solely upon the evidence
of Harper, the defendant's operator and witness.    He testi-
fied that he did not see either D. W. Kernodle or Chas. R.
Kernodle until after the train left; that he did not know that

D. W. Kernodle, the sendee, was in town and that the hotel was 100 yards from the depot. What assurance is there that Harper might not have missed the sendee had he started from the office to the hotel at once? The sendee was at the waiting room at the station just before the train arrived. Harper did not know it. Had he started out to look for Kernodle, how do we know he would have looked for him in the very place where he was? These are considerations that confirm us in the conviction that the question of reasonable time should have been submitted to the jury under the issue of negligence.

We have recently considered this matter of "reasonable time" in a case at this term. *Claus v. Lee,* 140 N. C., 552. The controverted fact in that case was whether the plaintiff had delivered a bill of merchandise in "reasonable time." The court below submitted the question of reasonable time to the jury with appropriate instructions, and refused to decide it as a matter of law. It was practically the only point in the case. All the justices concurred in affirming the judgment and a majority concurred in the opinion. We take it the same rule should apply to the delivery of the telegram, and as to whether, under all the circumstances, it was delivered in a reasonable time or not, the jury should be permitted to determine. The learned *Chief Justice,* in the case of *Kearns v. Railroad,* 139 N. C., 470, where the judge below, as this court held, properly nonsuited the plaintiff, said in his dissenting opinion: "If a judge can dispense with a jury-trial because he thinks that upon the evidence the verdict ought not to be in favor of the plaintiff, then the judge, not the jury, tries the case and weighs the evidence, whether it is reasonably sufficient to justify a recovery. Why carefully forbid the judge to express an opinion whether a fact is sufficiently proved, if the judge can decide that the evidence is not sufficient to justify a verdict for the plaintiff and refuse to submit the case to the jury?"

2. There is another objection to affirming the judgment. The plaintiff was neither the sender nor the sendee of the telegram. The only way he can recover, if at all, is upon the theory that it was sent for his benefit. He must not only show a negligent act on the part of the defendant, but he must further prove that such act caused his injury. To constitute actionable negligence, not only a negligent act must be proved, but that it caused injury to the plaintiff. If the plaintiff had not arrived at Bethel that Sunday morning, no one will contend that he could have recovered anything because of the delay in not delivering the telegram until two minutes after the train left. Why? Because he would have shown no *actionable* negligence, no injury caused to himself by the delay. The gravamen of his complaint is that if the telegram had been delivered a few minutes earlier, he would and could have continued on the same train and reached Burlington at 6 p. m. same day, very much earlier than he did reach there, and thus spent that many more hours with his wife before she died. That is the injury he complains of, and which he says caused him mental anguish. It follows, therefore, if he could not have reached Burlington at the time he claims he could, had he continued on the train, he has suffered no injury by reason of the failure to receive the telegram until two minutes after the train left. The court rested the case on Harper's evidence, which must therefore be taken to be true, and charged the jury "if you believe the testimony of the defendant's own witness, Harper, it is your duty to answer the first issue 'yes.'" Harper testified that he was familiar with the railroad schedules, and that if the plaintiff had continued his journey home from Bethel on the 9:20 train Sunday, he could not have reached home until Monday. "The Selma connection," he says, "was not made then, and the train does not get to Goldsboro until 3:40 p. m., and the Southern leaves at 1:35 p. m." "The Selma train has been put on since that time." Perhaps we cannot take

notice of it in this case, but it is a part of our judicial history
that at the time of this occurrence there were no afternoon
connections at Goldsboro or Selma between the Coast Line
and Southern Railway trains, and that the Selma train re-
ferred to was put on in consequence of a judgment of this
court filed December 13, 1904, and that there was no connec-
tion at Selma until after that date. *Railroad Connection case,*
137 N. C., 1.

3. We think the court erred in the charge upon the second
issue as to damage. The eighth assignment of error set out
in the record is as follows: "The action of the court in charg-
ing the jury as follows: 'Then it is your duty to consider
what damage is .a reasonable compensation for the increased
anxiety ·and mental suffering that Charles Kernodle endured
in consequence of that telegram not being delivered in time.
If he has satisfied you by the testimony of D. W. Kernodle
that he *could* have come on and gotten here that evening at
6 o'clock, then as a matter of course he will be entitled to
compensation for the anxiety and suffering that he endured
by not being able to communicate with his wife, and not
being able to hear from her from that time up to the time he
got here the next day.' " The plaintiff alleged and offered
evidence that he *would* and could have come on the 9:20
train from Bethel and reached Burlington at 6 p. m. same
day. His Honor assumed as an established ˙fact that the
plaintiff would have continued on and made the journey to
Bethel the same day, and left it to the jury to say only
whether he *could* have done so. Under the charge, he took
from the jury the right to pass on the credibility of˙the plain-
tiff's evidence as to whether he *would* have done so. That
fact being one of intention might well have been contested
before the jury. The plaintiff remained in Bethel all day
Sunday instead of driving on to Rocky Mount in the day
time, and drove there at night. He possibly was in doubt
whether to go on or to wait and hear again from his wife

before doing so. The telegram was not so very alarming. It only stated that "Ida is sick. Let Charlie know at once." It does not say she was dangerously sick and did not ask the plaintiff to come at once. Had the telegram been handed him as he stepped off the train, as it was not so very alarming, he might have done just as he did, wait all day in Bethel to get further news before leaving his business and returning home. What the plaintiff would have done had he received the telegram in time to continue his journey is not admitted—it is contested, and is essentially a matter for the jury to determine from the evidence.

The Supreme Court of Texas says in an action against a telegraph company for unreasonable delay in delivering a death message, where the addressee testified she *would* have gone if she had received the telegram in time: "Still, whether she *would* have gone is a question for the jury to determine from all the circumstances." *Tel. Co. v. May,* 27 South Western, 760. The identical point is decided in *Bright v. Tel. Co.,* 132 N. C., 326. There, the court permitted Cooper to testify that he *would* have gone to Wilkesboro had he received the message in time. *Mr. Justice Walker* says: "It was necessary to prove this fact if the plaintiff sought, as she did by her complaint and evidence, to recover damages for the mental anguish which resulted from his failure to go to Wilkesboro."

If *Bright's case* is to be considered as authority, His Honor plainly erred in not submitting to the jury the question as to what plaintiff *would* have done had he received the telegram in time to have taken the train; for that opinion holds it was necessary to prove this fact. This is held to be the law in all jurisdictions that recognize the doctrine of mental anguish. "If the prompt delivery of the message would not have prevented the suffering, the failure to deliver cannot be regarded as a proximate cause of the damages complained of, and there can be no recovery. It is there-

fore incumbent upon a plaintiff, who claims damages because of being kept from his father's death bed, to show that he *could* and *would* (both) have reached his father before death had the message been delivered promptly." 27 Am. & Eng. Enc. of Law (2 Ed.), 1075, 1076. The author cites some fifteen adjudications from several different States in support of the text.

This question is plainly raised by the eighth assignment of error, and there is nothing in the record or brief which shows that it has been abandoned; nor is there a word or syllable in the entire case which shows that it was admitted by the defendant as an "accepted fact" that the plaintiff would have continued his journey on the train he arrived on had he received the telegram.

It is stated in the case that there was evidence tending to prove that he would, but we are unable to find where the plaintiff personally so testified. We assume there was evidence to prove that fact, but it was not submitted, as it should have been, to the jury.

As this case is to go back for a new trial, we suggest that the two issues submitted on the first trial do not fully present the question of proximate cause for the jury's determination. The following issues will better present every feature of the case:

1. Was the defendant guilty of negligence in respect to the delivery of the telegram to D. W. Kernodle?

2. If so, was the plaintiff, Chas. R. Kernodle, injured thereby?

3. What damage, if any, has plaintiff sustained?

New Trial.

CLARK, C. J., dissenting: There is no evidence that the agent "required at least three minutes to copy the message in the office, number and enter it on the delivery book," and no evidence that he was required to do any of these things by the company. "What does not appear, does not exist."

The uncontradicted evidence is that the defendant's agent received this urgent message 15 minutes before the train came; that it was received at Burlington with instructions to "rush" it (and the answer admits this); that the train stopped at Bethel two minutes; that the operator knew the sendee, who was stopping at a hotel 75 yards away in full view, and that in fact for several minutes before the train came the sendee was sitting in a few feet of the door of the operator's office, and that during these 17 minutes the operator made no effort whatever to deliver this message, either himself or through a messenger, and his only excuse is that as express agent (not as telegraph agent) he had a crate of fowls to put on when the train should arrive, and as railroad agent he had some tickets to sell and he thinks one trunk to check.

Whatever time his duties as agent for the express company or the railroad company required, is no defense for the defendant. The operator does not claim that he had any other message to deliver or that his duties as representative of the telegraph company took a single second out of the 17 minutes, which the defendant had for the delivery of this telegram. If the defendant chose to employ an agent who had other and more remunerative duties, it cannot use that fact as a valid excuse for failure to discharge its duty in the delivery of this telegram. It should at least have furnished him a messenger for its work, if it employed so busy a man.

The judge did not err in holding upon these facts that the failure to deliver in 17 minutes was negligence. What else could it be? It was not diligence. When the facts are found, whether this is negligence is a question of law. In *Meadows v. Telegraph Co.*, 132 N. C., 40, the plaintiff contended that a message could have been delivered a half mile away in 15 minutes, and the defendant did not controvert and could not controvert a fact of such common knowledge. Here, the hotel was 75 or 100 yards away. The defendant's answer admits

that it received this message with instructions to "rush" it. It was not complying with this agreement when its agent at Bethel, having only this one message, for 17 minutes made no effort to deliver it to the sendee. The plaintiff as beneficiary has the same cause of action as if he had been sendee. *Sherrill v. Tel. Co.*, 109 N. C., 527; *Gorrell v. Water Co.*, 124 N. C., 328.

The judge in the statement of the case sets out the plaintiff's evidence "that if the message had been delivered to him on his arrival at Bethel the plaintiff would have remained on that train and continued his journey to Goldsboro, arriving there between 2 and 3 o'clock, where he *could have and would have* connected with a train over the Southern Railway that would have brought him to Burlington about 6 p. m. Sunday the 20th." The defendant's agent testified that the connection by Selma could not have been made.

The defendant asked the following prayer: "If you find from the evidence that the plaintiff would have proceeded on the train on which he arrived at Bethel, if the message had been delivered to him before the departure of said train, and that he *could not* have reached Burlington till 6 o'clock a. m. on Monday the 21st, and that he arrived there on the same day at 11 o'clock he would not be entitled to recover any damages for suffering prior to the arrival of the 6 o'clock train, but only for such suffering as he endured between 6 o'clock a. m. and 11 o'clock a. m. of the same day." This the court gave, but, singularly enough, the defendant's eighth assignment of error is to the following extract from the charge, which is almost *in totidem verbis* with the defendant's prayer given as above set out, to-wit: "Then it is your duty to consider what damages is a reasonable compensation for the increased anxiety and mental suffering that Charley Kernodle endured in consequence of that telegram not being delivered in time. If he has satisfied you by the testimony of D. W. Kernodle that he *could have* come on and gotten there

that evening at 6 o'clock, then as a matter of course he will be entitled to compensation for the anxiety and suffering that he endured by not being able to communicate with his wife, and not being able to hear from her from that time up to the time that he got here the next day."

The court charged at the request of the defendant, "If he (the plaintiff) *could not* have reached Burlington till 6 a. m.," and in his charge he says, "If he *could have* come on and have gotten there that evening at 6 o'clock." This shows that the case was tried upon the theory that the plaintiff would have gone if he could (which he testified to and was not contradicted), for the defendant's prayer for instructions uses the same words "could," without adding "would." The defendant surely cannot complain that the charge uses the same form of words which it asked the court to tell the jury contained the law applicable to the facts.

It has been strenuously insisted that the plaintiff, leaving Bethel at 9:20 a. m., could not have made connection at Goldsboro so as to reach Burlington at 6 p. m., as he testified, but that the defendant's agent was right when he testified that the plaintiff could not have made the connection at Selma. But the court could not assume that the plaintiff's evidence was incorrect and refuse to submit it to the jury. Aside from the fact that such controversy is one of fact for the jury, this leaves entirely out of sight the patent fact to which the defendant's witness testified, that if the agent were right and connection could not have been made that afternoon, still the plaintiff (had he remained on the train at Bethel) would have gotten to Burlington at 6 a. m., Monday, instead of 11 a. m., and the judge charged in the very words of the defendant's prayer as to the measure of damages, if the jury should find that state of facts. The verdict is entirely consistent with that finding, which, doubtless, is the verdict returned by the jury. The answer admits that when the plaintiff did not remain on the train at Bethel, he

could not have gotten home any quicker than by going to Rocky Mount that night, which it admits he did. Its evidence went to show that had he remained on the train he would not have gotten to Burlington till 6 a. m. Monday, and its prayer on that aspect was given.

There is absolutely nothing in the verdict to indicate that the jury found that the plaintiff could have made connection at Selma or Goldsboro, Sunday afternoon. His evidence is uncontradicted that if he had received the message at Bethel he would have remained on the train and have gone home. It is admitted by the defendant's prayer (and shown by defendant's evidence) that had he done so he would have reached Burlington at 6 a. m. Monday instead of 11 a. m., and the court charged in the words of the defendant's prayer as to the damages on that state of facts (which the jury doubtless found, and there is nothing to the contrary). The jury found as properly charged by the judge that upon the defendant's own showing there was negligence, in not delivering such a telegram, so short a distance, in 17 minutes, and assessed the damages. In this there is no error surely.