# ROWBOTTOM v. UNION PACIFIC COAL COMPANY.

No. 2145.   Decided September 11, 1911 (117 Pac. 871).

1. TRIAL—NONSUIT—GROUNDS—SPECIFICATION. In an action for injuries to a slope cleaner in a coal mine by being caught by a wire attached to one of the coal cars, grounds of a motion for nonsuit that the evidence was insufficient to support the allegation of negligence or to show any negligence on the part of defendant, and that plaintiff was negligent in failing to enter manholes constructed along the track to enable employees to avoid passing cars, were sufficiently specific to present the objections sought to be raised thereby. (Page 410.)

2. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE. In an action for injuries to a slope cleaner in a coal mine by being caught by a wire attached to a passing car and thrown under the wheels, mere proof that the wire was attached to the latch of the car and was trailing along it, without any evidence as to how and for what purposes the wire was so attached, by whom it was attached, or how long it had been there, or that the latch or the car was defective or out of repair, was insufficient to show actionable negligence on the part of the master. (Page 410.)

3. MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—SAFE PLACE. Where plaintiff, a slope cleaner in a coal mine, was injured by being caught by a wire trailing along a passing car as he was standing in a tunnel, and there was sufficient space between the side of the tunnel and the cars at the point where plaintiff was standing so that under ordinary and usual conditions cars could pass with safety, plaintiff was not negligent as a matter of law in failing to enter a manhole constructed in the side of the tunnel for the convenience of employees to avoid passing cars. (Page 413.)

APPEAL form District Court, Third District; *Hon. George G. Armstrong,* Judge.

Action by Lorenzo Rowbottom against the Union Pacific Coal Company.

Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*J. H. De Vine* and *D. S. Cook, Jr., (S. A. Maginnis,* of counsel) for appellant.

*P. L. Williams, Geo. H. Smith* and *Frank K. Nebeker* for respondent.

STRAUP, J.

The plaintiff, an employee of the defendant, brought this action to recover damages for alleged personal injuries. From a judgment of nonsuit he has prosecuted this appeal.

The principal assigned error relates to the ruling granting the nonsuit. The injury occurred in Wyoming, where the defendant was mining coal. The plaintiff was employed by it "as a slope cleaner to clean the switches" of underground tracks upon which the defendant ran and operated cars in hauling coal from its mine to the surface. The substance of the charged negligence in the complaint is that the defendant "negligently suffered one of its said coal cars to get and remain out of repair and to be temporarily repaired · by means of a wire which hung down the side of said car a length of about two feet, making the same dangerous for the plaintiff and other employees in said mine; that said plaintiff had no notice or knowledge that said car was in the condition aforesaid"; and that "while the plaintiff was standing by the track to clean one of the switches in the mine" under the direction and orders of the "rope runner," the person under whose direction and control he was working, the defendant ran and operated the car with the wire attached thereto along the track and by the place where the plaintiff was standing, by reason of which the trailing wire caught the plaintiff and threw him against the cars and so broke and injured his leg that it was necessary to amputate it. The plaintiff was nonsuited on the alleged grounds of insufficiency of evidence (1) to "support the allegation of negligence or to show any negligence on the part of the defendant," and (2) that the plaintiff was guilty of contributory negligence, in the particular that "manholes" from forty to fifty feet apart along the track were maintained by the defendant to enable slope cleaners

and others about the slope to enter and avoid coming in contact with passing cars, and that the plaintiff failed to enter one of the manholes, "but took up a position in the main slope by the side of the cars."

The plaintiff first urges that the grounds for nonsuit were too general, especially the first. We do not think so. (*Smalley v. Rio Grande R. Co.*, 34 Utah, 423, 98 Pac. 311.) There was but one allegation of negligence—but one act or commission of alleged negligence on the part of the defendant causing the injury—operating a car with a wire two or three feet long attached to, and trailing from, it. The motion being made on the ground that there was no evidence "to support the allegation of negligence," or any negligence on the part of the defendant, and there being but one act or commission of negligence alleged, neither the plaintiff nor the court was at a loss to understand to what point the motion, in such particular, was directed, or what defect in the evidence was pointed to. The ground in that particular was sufficiently specified to call attention to the defect and question of law on which the case was asked to be and was taken from the jury. There is no difficulty or uncertainty whatever to comprehend or understand that. With respect to the second ground, the particular act or commission of the plaintiff claimed to have been negligence was specified—his failure to enter the manholes and his standing in the slope near the track.

This brings us to the question of whether the motion on the alleged grounds was properly granted. There is evidence tending to support the following facts: The openings in the defendant's mine consisted of a main tunnel and entries leading from it, and a branch tunnel leading from the main tunnel to a dump. Tracks upon which coal cars were operated were maintained along these tunnels and entries; the main track being in the main tunnel. The other tracks connected with it by means of switches. Empty cars were let into the mine by gravity. Loaded cars were drawn out of it by rope or cable operated by an engine under the control of an engi-

neer in the engine house; the rope runner in the mine giving him signals when to move and to stop the cars. The duties of the plaintiff were those of a slope cleaner, to keep the switches and track clear of coal and other material falling from loaded cars. He performed his work under the orders and direction of the rope runner, and was required to go to such places as were designated by him. On the day of the accident, when six loaded cars were about to be drawn up the main tunnel, past the junction of that tunnel and the branch tunnel, and there to be switched to the branch tunnel and run to the dump, the rope runner directed the plaintiff to board the cars and clean the switch at the junction of the main and branch tunnels. The plaintiff boarded the cars and rode to or near the junction of the tracks. There he alighted, and whilst in the prosecution of his work the cars, after having passed up the main tunnel past the junction, returned and passed along the branch tunnel. The plaintiff stood between the track and the side of the tunnel to let the cars pass him. The slope was about ten feet wide and the width of the cars about two feet at the bottom and three or three feet and four inches at the top. The first car passed him without any difficulty. A wire trailing from the front of the second car as it went down the branch tunnel, or the rear of the car as it came up the main tunnel, wrapped around his leg as he stood between the side of the tunnel and the track and as the car passed him, and threw him against and under the car and dragged and injured him. At this place the space between the side of the tunnel and the car was twenty-three inches. The cars were two and one-half or three feet high from the track and about five or six feet long. At the end of the car was a door with hinges at the top to dump the coal or other contents of the car. The lower part of the door when closed was fastened with a latch. One end of the wire was attached to this latch and the other trailed along the side of the car. On this point the plaintiff testified: " I had a pair of high top boots on, and I thought the wire had caught in the lace of the flap; it caught so squarely, when it caught me partly and turned me around so my head

was going down, I took my hand that way and that wire was attached to the latch on the car, repairing that car. The wire struck me about half way on the calf of my left leg. I reached down. I felt the wire flip back and saw it. I had a big lamp for cleaning the slope and saw it. The wire was attached to the latch of the car. The wire had the effect of keeping the door closed by keeping the latch down. . . . The wire was fixed on that long end, three or four inches. By tying that down with the wire the door can't fly open, because the latch is tied down in that hook. The wire was to hold the latch from flying out of the hook. . . . When the wire first struck me I was standing up to the side of the cars. One car had passed me. I had about twenty-six inches. The wire seemed to be baling wire. I didn't know it was there, I saw the wire. I took my hand that way and felt the wire and I saw it flip back. I saw it was attached to the latch of the door. I did not examine that car at any time and do not know its condition. I saw the wire on it. I said I thought it was there to fasten the latch because I found it there. I don't know how it came there or who put it there." A picture of a car was shown plaintiff, and he pointed out where the "wire was wrapped around the latch to keep it on the hook. It kept it on the hook. It was right around the latch and hook. I have seen wires used on similar cars to this prior to that time to keep the latch in place in the hook on occasions when the latch would be out of order. The latch that runs across the door gets slack and will fly open and let the coal out. The wire is to hold the latch down in the hook."

This is all the evidence tending to show how, and the purpose for which, the wire was attached to the car, by whom it was placed there, or how long it had been there. No evidence was given to show that the car or latch was defective or out of repair. Plaintiff's case, on the evidence, rested alone on the circumstance that the wire was attached to the latch of the car and was trailed along it. The inference is permissible that the wire was placed on the latch to hold it in place, to fasten it. Whether it was placed there by the mas-

ter, or by one for whose acts it was responsible, or by one for whose acts it was not responsible, is not made to appear; nor are there any facts or circumstances from which an inference in such particular may fairly be drawn. Nor is there any evidence to show that the defendant had either actual or constructive knowledge of the wire being on the car. It, of course, was the duty of the defendant to use ordinary care to furnish cars in a reasonably safe and suitable condition. And it may be assumed that it was a question of fact for the jury whether a car furnished and equipped with a wire trailing along its side was suitable or reasonably safe, or whether a car so equipped exposed employees required to be about the same in the course of their employment to unusual and unnecessary dangers. The proof, however, shows that the wire was no part of the car, and, on the evidence adduced, it is just as inferable that the wire was temporarily attached to the latch by a mere co-employee as by the defendant or by one for whose acts it was responsible. Under the circumstances to charge the defendant with negligence it was not enough to merely show that the wire was attached to the latch of the car and trailed along its side. Plaintiff was required to further show that such condition was due to the defendant's want of ordinary care. This he did not do, and for that reason we think the nonsuit was properly granted.

We do not think the evidence so clearly shows the plaintiff guilty of contributory negligence to take the case from the jury on that ground. It is claimed that he was guilty of negligence because he stood in the slope and did not enter one of the manholes as the cars on their return approached and passed him in the tunnel. Had the space between the side of the slope or tunnel and the cars where the plaintiff was standing not been sufficiently wide to permit cars, under ordinary and usual conditions, to safely pass him, there might be ground for such a contention. But the plaintiff was not exposed to any such danger. The danger to which he was exposed was the trailing wire. That danger was unusual and of which he had no knowledge.

There is nothing made to appear that he was called upon to expect or anticipate that a car might approach and pass him with a trailing wire or other equipment of similar danger. The principle which relieves the defendant from liability for not taking precautions to guard against an unusual danger of which it had no knowledge also relieves the plaintiff from the charge of contributory negligence in not taking precautions to guard against such a danger of which he likewise had no knowledge and could not under ordinary circumstances anticipate.

For the reason heretofore stated, we think the judgment of nonsuit should be affirmed, with costs. Such is the order.

FRICK, C. J., and McCARTY, concur.