ROGERS et al v. RIO GRANDE WESTERN RY. CO.

| 32 | 367 |
| f35 | 118 |

Decided July 12, 1907 (90 Pac.).

1. RAILROADS—INJURIES TO PEDESTRIANS AT CROSSINGS—NEGLIGENCE. A *prima facie* case of negligence in an action against a railway company for injuries to a traveler at a railway crossing is not established by proof of failure to give the statutory signals, but the evidence must show that such failure was the proximate cause of the injury.

2. SAME—CONTRIBUTORY NEGLIGENCE. Contributory negligence of a traveler injured by a train at a railway crossing prevents a recovery, though a *prima facie* right to recover because of the negligence of the company is shown.

3. SAME. In an action against a railway company for the death of a traveler at a railway crossing, the presumption that the traveler exercised due care prevails in the absence of evidence to the contrary.

4. SAME—INSTRUCTIONS. An instruction in an action against a railway company for killing a traveler at a crossing that the presumption that the traveler used due care is destroyed, where it appears that if he had looked and listened before driving on the crossing he would have seen or heard the train approaching, is, when considered in connection with another instruction, that every person is presumed to be in the exercise of due care, a correct statement of the law on the subject of presumptions.

5. SAME. Where, in an action against a railway company for killing a traveler at a crossing, the evidence showed that if the traveler had looked and listened he could have heard and seen the approaching train, an instruction that the presumption that the traveler used due care was destroyed, where it appeared that if he had looked and listened he would have seen or heard the train, properly stated when the presumption of due care ceased to be operative.

6. TRIAL — INSTRUCTIONS — INVADING PROVINCE OF JURY. An instruction, in an action against a railway company for killing a traveler at a railway crossing, that the presumption that the traveler used due care to avoid injury is destroyed, where it appears that if he had looked and listened he would have seen or heard the train approaching, does not invade the province of the jury, but leaves them to say whether or not the presumption was overcome.

7. SAME—CONSTRUCTION OF CHARGE AS A WHOLE. Where, in an action against a railway company for killing a traveler at a railway crossing, the court in one charge correctly defined the reciprocal duties of the traveler and the railway company, another charge that the employees of the company had the right to believe that the traveler would look and listen while approaching to cross the track was not erroneous for failing to define the duties of the employees in charge of the train.

8. SAME. Where the instructions construed together correctly state the law as applicable to the evidence, a party cannot single out a phrase or sentence from the instruction and base an error thereon.

9. SAME—APPLICABILITY TO FACTS. Where, in an action against a railway company for the death of a traveler at a railway crossing, there was evidence of the effect of a headlight on a person approaching a crossing, but there was no evidence of the effect, if any, the headlight had on the traveler, or any evidence that he saw the headlight, an instruction that the jury might take into consideration on the question of contributory negligence testimony relating to the traveler being blinded, or dazzled, or deceived by the light from the headlight of the engine relating to the speed of the train was properly refused, because of the absence of evidence on which to base it.

10. DEATH—ACTIONS FOR CAUSING DEATH—DAMAGES—STATUTES. Under Revised Statutes 1898, section 2912, providing that the damages recoverable in an action for wrongful death shall be such as under all the circumstances of the case may be just, the damages in an action by parents for the negligent death of an adult child are not limited to the probable contributions of money which the parents would have received during the child's lifetime, but may also consist of the elements entering into the domestic relations of parent and child, living in one family, or otherwise.

11. APPEAL—HARMLESS ERROR—INSTRUCTIONS. Where, in an action against a railway company for the death of a traveler at a railway crossing, there was evidence authorizing substantial damages under the instructions of the court if the company was liable, and the jury found under the evidence in favor of the company, the refusal to charge that if the jury found for plaintiff they might take into consideration the probable value of the life of the traveler as judged from his earning capacity and from the number of the years he was expected to live was not prejudicial.

12. SAME—QUESTIONS REVIEWABLE—IMMATERIAL QUESTIONS. Where the jury rendered a verdict supported by the evidence, necessitating affirmance, the question urged by respondent whether the court should not have directed a verdict in favor of the successful party was immaterial.

APPEAL from District Court, Third District; M. L. Ritchie, Judge.

Action by C. D. Rogers and another against the Rio Grande Western Railway Company. From a judgment for defendent, plaintiffs appeal.

AFFIRMED.

*W. R. White* and *Powers & Marioneaux,* for appellants.

*Van Cott* and *Allison & Riter* for respondent.

FRICK, J.

The plaintiffs (appellants here) and parents of one Lawrence E. Rogers, brought this action against the defendant (respondent in this court) to recover damages alleged to have been sustained by appellants by reason of the death of their son Lawrence, alleged to have been caused through the negligence of respondent. The facts, briefly stated, are as follows: On May 29, 1905, at about 4 o'clock a. m., while driving on a public highway, and in crossing, or attempting to cross, the railroad track of respondent with his horse and buggy, Lawrence E. Rogers was struck by a freight train and killed. The crossing was in the open country, outside of the limits of

32 Utah—24

any town or village.   There were no eye witnesses, except the
engineer and fireman on the engine of the freight train, and
they testified that they saw him just before or about the time
of the collision.   The direct cause of the accident was left a
matter of inference from the evidence.   Rogers was on his
way home from a farmhouse about nine miles distant from
his own home and about five miles westerly from the cross-
ing in question, at which place he had spent the night with a
young lady, who, the evidence discloses, was his fiancee.   He
had worked all the day before the accident, and had driven
over to the young lady's home after dark the evening preced-
ing.   The morning was somewhat cloudy, and the accident
occurred just a little before or at the break of day.   The tes-
timony with respect to the speed of the train, the sounding of
the whistle, and the ringing of the bell at and before the
crossing was reached by the train, was conflicting; appel-
lants' witnesses testifying that the statutory signals were not
heard by them, and respondent's witnesses testifying that they
were given.   The same conflict exists as regards the speed
of the train; appellants' witnesses contending that the train
ran forty or forty-five miles an hour, while respondent's wit-
nesses gave the speed as thirty miles an hour.   The evidence
further disclosed without conflict that the headlight on the
engine was burning; that Rogers could have seen the train
a mile or more as it approached the crossing when he was at a
point 285 feet from the track, and could do so continuously
until he reached the crossing; that he drove a gentle horse,
and was riding in a top buggy.   Upon substantially the fore-
going facts with regard to the accident, the court submitted
the case to a jury, who returned a verdict for the respondent,
upon which the court rendered judgment.   The errors al-
leged, with one or two exceptions, relate to the instructions,
and such as are argued in the brief we will now consider.

The first alleged error relates to the giving of instruction
No. 14, which is as follows: "If you believe that the deced-
ent was killed by the defendant railway company, and that
such company did not give any signal for the crossing where
the decedent was killed, and if you further believe from the

evidence that there is no other evidence in the case which shows how the decedent met his death, then you are charged that the plaintiffs have not established that the proximate cause of the decedent's death was the alleged failure of the defendant to give crossing signals, and in that event your verdict should be for the defendant." As we understand counsel's argument, they contend that the vice of the instruction consists in telling the jury that the mere failure to sound the whistle or ring the bell, standing alone, was not sufficient to authorize a recovery. Counsel argue that the failure to give the statutory signals constitutes negligence *per se,* and therefore respondent's negligence was established, and this being so, the necessary proof entitling appellants to recover existed and could be defeated only by proof of contributory negligence. It may be conceded that the failure to comply with the statute with regard to warning signals generally constitutes negligence *per se,* as was held by this court in *Smith v. Min. & S. S. Co.* (Utah), 88 Pac. 683, but proof of negligence without more, however, is not enough. In addition to this the party upon whom rests the burden of proof must show by some competent evidence that the negligence proved was the proximate cause of the injury complained of, or, where there is more than one cause, that it at least was one of the causes. A *prima facie* case is not established until this is done, and hence the existence or nonexistence of contributory negligence, under such circumstances, is immaterial. Contributory negligence, if established, prevents a recovery, although otherwise a complete *prima facie* right to recover is shown. The instruction did no more than to tell the jury that, although respondent may have been guilty of negligence, unless it appeared from the evidence that such negligence was the proximate cause of the injury, a recovery was not authorized upon proof of negligence alone. The instruction, therefore, is not open to the criticism made by counsel, which is clearly demonstrated by the following authorities: 1 Thompson on Negligence, section 45; 8 A. & E. Enc. Law (2d Ed.), 416; *Byrd v. Express Co.,* 51 S. E. 857, 139 N. C. 273; *Kearns v.*

*Southern Ry. Co.,* 52 S. E. 131, 139 N. C. 470; 44 A. & E. Ry. Cases, 484.

It is further contended that the court erred in giving instruction No. 15, which is as follows: "The presumption that the decedent used due care in approaching the crossing in question in order to avoid injury is entirely destroyed, where it appears from the evidence that if he had looked and listened before driving upon the crossing in question he must have seen or heard the train approaching." It is urged that the court, by this instruction, invaded the province of the jury; that it is misleading; and that it is not a correct statement of the law. In order to give the instruction its proper effect, it must be construed in connection with other instructions given, and especially in connection with paragraph 10 of the instructions. In that paragraph the court lays down the correct rule applicable to contributory negligence in attempting to cross railroad tracks, and in that regard tells the jury that, as matter of law, every person is presumed to be in the exercise of due care for his own safety. Instruction No. 15, therefore, in its effect, was no more than a statement that the presumption of the exercise of due care could not prevail if it was made to appear from the evidence that due care had not been exercised. In other words, in the absence of all evidence that presumption prevailed, but that it could not prevail against evidence showing a want of proper care. If instruction No. 15 had been made a part of instruction No. 10, of which, in its effect, it is a part, we think no one would seriously contend that it is subject to criticism as a statement of the law upon the subject of presumptions. Moreover there was some evidence respecting deceased's opportunity to see and observe the approaching train. The surrounding country was such that if he had looked and listened, as appears from the evidence, he could have both heard and seen the approaching train which caused the accident. If it was proper, therefore, to tell the jury—and it certainly was— that a person approaching a railroad crossing will be presumed to be in the exercise of due care, it was equally proper to tell them in what way and when this presumption might

cease to be operative. The presumption is by no means a conclusive one, but is at most evidentiary, and its legal effect in one sense amounts only to a statement, in another form, that negligence is never presumed as matter of law. Nor did the court in any way invade the province of the jury in the instruction, but it left it for them to say whether the presumption was overcome or not. The following, among numerous other cases that might be cited, we think clearly illustrate that the court, in submitting the case to the jury upon the evidence, gave the appellants all that they were entitled to under the law: *Stopp v. Fitchburg R. Co.*, 29 N. Y. Supp. 1008, 80 Hun 178; *Hook v. Mo. P. Ry. Co.*, 63 S. W. 360, 162 Mo. 569.

Objection is also made to instruction No. 16, for the reason, it is asserted, that the court told the jury that the servants of respondent "had the right to believe that the deceased would look and listen" while approaching or attempting to cross the railroad track, without defining the duties of those in charge of the train with regard to railroad crossings. Here again the court's instruction No. 16 1-2, immediately following No. 16, and which is, in effect, a part thereof, in almost the precise language counsel now contend for, told the jury what were the reciprocal duties of the traveler on the highway and the railroad company applicable to railroad crossings. The court thus did just what counsel insist it should have done, namely define the rights and duties of both with regard to railroad crossings. The mere fact that the duty with regard to the traveler was stated in one instruction, and the duty of the company in another, certainly cannot, for that reason, constitute error.

There are other objections to instructions, but in every instance the weak point of counsel's objection lies in the fact that they single out a phrase or sentence from the instruction and base error upon that. This is neither a fair, nor a proper, test. In some instances a phrase or a sentence may be such a clear misstatement of the law, or an assumption of fact thereby invading the province of the jury, as to require a reversal of the case. But nothing of that kind appears in the instructions

criticised, and when all are read and construed together, the law, as applicable to the evidence in the case, seems to have been fully and fairly stated by the court, and the jury could not have been misled by anything the court said or omitted to say.

Appellants further assert that the court erred in refusing to give the following request: "The jury may take into consideration on the question of contributory negligence any testimony relating to the deceased being blinded or dazzled or deceived by the light from the headlight of the engine relating to the speed of the train." The difficulty with this request is that there was no evidence upon which to base it. True, there was some evidence admitted on behalf of appellants to show the effect of a headlight upon a person approaching a crossing. But the question in the case was not whether or not a headlight affected persons generally, but what, if any, effect this particular headlight had on the deceased. There is an absolute want of evidence that the deceased saw the headlight at all. If he did not see it, then it could not have affected him. Whether he did or did not is mere conjecture. It would be as legitimate to assume that the deceased was asleep in his buggy and thus was oblivious to all his surroundings. This, of course, would be a mere conjecture, but it affords an illustration that one may conjecture one way as readily as another. The court gave the jury the whole law upon deceased's conduct when it instructed them that he was presumed to have exercised due care for his own safety. This presumption is well founded, because it is based upon that universal experience that all rational beings, both from instinct and their own experience, avoid serious danger to themselves. The request, therefore, was based upon the assumption that the deceased saw the headlight, and that he was "dazzled and deceived" by it. It is a mere guess as to whether a certain individual at a certain time and place, and under certain circumstances, will, or will not, observe a certain thing and be affected thereby. The court therefore did not err in refusing to give an instruction to the jury based

wholly upon the presumption of a fact from which the jury could only conjecture the result.

Error is also predicated on the refusal of the court to give the following request: "If the jury find for the plaintiffs, then they may take into consideration the probable value of the life of the plaintiff (meaning deceased) as judged from his earning capacity and from the number of years he was expected to live. His earning capacity is regarded in the nature of an asset." To appreciate the purpose of the request, it is necessary to state that it was offered with a view of overcoming the effect of certain evidence that was admitted on behalf of respondent in mitigation of damages, which evidence was to the effect that the deceased was engaged and was about to be married to the young lady at whose home he spent the night preceding his death. The evidence was admitted over the objection of appellants, and its admission is also urged as error. The court in another instruction charged the jury with regard to the damages to be allowed the appellants, limiting the recovery to such an amount as the deceased would probably have contributed to them from his earnings in view of all the evidence. No exception was taken to this instruction, but it is urged that the measure of recovery was not what the deceased would probably have contributed merely, but that it was the probable value of deceased's life. In this connection it is urged that in view of the evidence that the deceased was about to be married the jury might infer that he, after he married, would devote his earnings to his wife and prospective family, and hence the jury would assume that appellants would receive little or nothing from the deceased, and thus they may have found against appellants on the ground alone that appellants' sustained no appreciable damages. It is contended that if this evidence had not been admitted the jury might have found in favor of appellants upon the facts. We think the contention of appellants cannot be sustained. The measure of damages in a case like the one at bar is not the pecuniary value of deceased's life, but what was the pecuniary loss suffered by appellants by reason of his death. Under section 2912, Rev. St. 1898, the damages recoverable in a

case like the one at bar are such as "under all the circum-
stances of the case may be just." The amount that is recover-
ed is not intended as an asset of the estate merely, but it be-
longs to those who have suffered or will suffer some direct pe-
cuniary loss by reason of the death. The right of action is
given for the benefit of certain persons only, and the amount
of recovery is dependent upon the circumstances of each
case, the relationship of the parties to the deceased, and in
the case of the death of an adult child the recovery is limited
to the probable benefits the parents would have received dur-
ing his lifetime from the deceased child. Such benefits are,
however, not to be limited in all cases to mere contributions
of money, but may consist of the various elements that enter
into the domestic relations of parent and child, living in one
family, or otherwise. In such cases the aim of the law is to
repair in a pecuniary way the loss sustained by the parent.
Under the evidence in this case the appellants would have
been entitled to recover some substantial damages both under
the law and the instructions of the court, if respondent was
liable at all in the action. The jury therefore must have
found, as they were justified in finding, that the respondent
was not guilty of culpable negligence, or, if it was, that the
deceased directly contributed to the accident by his own negli-
gence, or, further, that the real or direct cause of the acci-
dent was not established by the evidence. All of these mat-
ters were submitted to the jury for determination, and their
findings, in view that there is no prejudicial error in the in-
structions, are conclusive.

We need not discuss the question urged by respondent that
in any event appellants cannot complain because the court
should have directed a verdict against them as matter of law.
Whether this should or should not have been done, in view of
the conclusions reached, is an immaterial inquiry.

The judgment is affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.