# QUINN v. UTAH GAS AND COKE COMPANY.

No. 2411.   Decided December 30, 1912 (129 Pac. 362).

1. NEGLIGENCE—DEFECTIVE PREMISES—PLACES OPEN TO PUBLIC. A gas company maintaining an office to which the public was invited to pay gas bills owed to customers while so engaged only the duty of exercising ordinary care and diligence to provide and maintain a reasonably safe place for ingress and egress, and to exercise the same degree of care to prevent injury to them and to their property while lawfully in its place of business or on its premises; the company not being an insurer of the safety of its customers, nor required to avoid all accidents to them or to their property at its peril.   (Page 117.)

2. NEGLIGENCE—DEFECTIVE PREMISES—PLACE OF BUSINESS OPEN TO PUBLIC—INJURY TO PROPERTY OF CUSTOMER. Plaintiff, a customer of defendant gas company, approached the cashier's window to pay her gas bill as one of a line of several customers, and when she reached it placed her bag in ink that had been spilled on the counter, which dripped down onto and ruined her gown. There was no evidence that the ink was negligently spilled. Defendant's cashier thereafter took steps to have it removed. *Held*, that the facts did not raise a presumption of negligence under the rule *res ipsa loquitur*, and were insufficient to show actionable negligence.   (Page 117.)

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong*, Judge.

Action by Mary Davis Quinn against the Utah Gas and Coke Company.

Judgment for plaintiff.   Defendant appeals.

REVERSED AND REMANDED, WITH DIRECTIONS TO GRANT NEW TRIAL.

*Stephens, Smith & Porter* for appellant.

*Stokes & Bagley* for respondent.

FRICK, C. J.

Respondent brought this action to recover damages for injury to her wearing apparel, which she alleged was caused through the negligence of appellant while she was lawfully in its place of business. Respondent, in her complaint, after alleging that she was a customer of appellant, and that she, at the time of the accident and injury to her dress, was in its place of business to pay her gas bill, alleged appellant's negligence as follows:

That "at the particular time that the plaintiff called at the office of the defendant company . . . the defendant . . . negligently allowed and suffered to remain upon its counter, near the point where it received money from its patrons, an overturned ink bottle, from which ink had run onto the counter, and was dripping therefrom onto the floor. . . . While plaintiff was lawfully engaged in transacting the business with the defendant company, . . . a part of the contents of said ink bottle dripped from the said counter upon the plaintiff's dress, making large and unsightly blotches upon it." It was also alleged that said dress was of the value of $100, and that by reason of the ink stains thereon was rendered worthless, and that by reason of the loss of said dress, and for other reasons, plaintiff was damaged to the extent of $256.25, for which she prayed judgment.

The appellant interposed both a general and a special demurrer to the complaint, which were overruled. It is now urged that the complaint does not state a cause of action, in that it is not alleged therein that the appellant knew, or ought to have known, or had notice, that the ink bottle had been overturned, or that ink was dripping from the counter where respondent was required to pay her gas bill. It will be observed that all that is alleged in that regard is that the appellant "negligently allowed and suffered to remain upon its counter," etc., said overturned ink bottle, from which ink was dripping. We think that, in view of the duty that appellant owed respondent as hereinafter stated, the allegation was sufficient to permit her to

prove that the ink had been spilled for such a length of time as ought to have apprised appellant of that fact. If such proof had been made, it would then have become a question for the jury to say whether, under all the circumstances, appellant ought to have warned respondent, and thus protected her against the consequences that might ensue from the dripping ink, and whether the failure to so warn her constituted negligence. True in making such proof it might also have been made to appear that respondent ought to have seen the dripping ink, and should have avoided it. This, however, in no way affects the sufficiency of her allegations. Whether she was also guilty of negligence or not in not avoiding the dripping ink would have been a question of fact for the jury, under all the facts and circumstances. We think the allegations of the complaint were sufficient in substance to permit the respondent to prove a *prima facie* case upon the question of appellant's negligence, and that was all that she was required to do.

It is also insisted that the court erred in overruling the special demurrer. The terms of that demurrer were so general that we do not feel inclined to review the ruling of the court thereon.

Appellant also insists that the court erred in overruling its motion for a nonsuit, and, further, in refusing its request to direct the jury to return a verdict in its favor for the reason that respondent had failed to prove that appellant was guilty of negligence.

It is only necessary to consider the last assignment. The undisputed facts developed at the trial are substantially as follows: The appellant is engaged in the business of manufacturing and distributing gas to its customers for domestic use; that respondent has been a customer of appellant since June, 1910, and from that time to the time of the acts complained of had frequently called at appellant's place of business to pay her gas bills; that on the 10th day of October, 1910, she went to appellant's place of business for the purpose of paying her gas bill; that on entering appellant's office some customers were already standing in line

taking their turns in reaching the cashier's window to pay their gas bills; that respondent also fell in line, so that she might in turn reach the cashier's window, which was an opening in a wire screen or railing through which the customers paid their bills to the cashier; that as the men who preceded respondent were paying their bills, and in approaching the cashier's window, she noticed what appeared to her like a blue pocket handkerchief or blue cloth lying on the shelf or ledge immediately to the left of the opening through which the cashier received the money; that after the men who preceded her had paid their bills, which took but a very short time, she approached the cashier's window to pay her bill, and in doing so laid her hand bag, or what she called her large purse, near to and immediately to the left of the cashier's window, and took from the large purse her small purse, and from the latter she took the money to pay the bill; that in paying the cashier she received back some change from him and placed the same into her small purse, which she replaced in the large one. We now give the remainder of her testimony in her own language, as the same is given in the printed abstract, which is as follows:

"When I took it up and looked at my gloves, they were all ink. I laid the purse right within the course of the ink, where the ink was running. I didn't see that there was any ing running at the time I laid my purse down. I don't say that there was no ink running. I said I didn't notice any ink. I didn't see the bottle at the time I laid the purse down. I suppose the bottle was under it (the cloth). I am not positive I saw the bottle, although I think I did. . . . When I stepped up to the desk, I didn't see any ink running off. I didn't look. If anything had been running off there after I had looked at the cloth, running over the edge and dripping on the floor, I would have seen it, if it had been running down. I didn't even look down; always looked up. I don't know whether it was running before these men got out of the way. I know it was running off when it splashed my dress. Mr. Netzel was at a table to the right. He stepped forward and called my at-

tention that there was ink running off the desk. . . .
Before Mr. Netzel called my attention to it, the ink had
run off the counter, splashed on the floor, and splashed on my
gown. About half of one side of my purse was covered with
ink. I did not see any ink running off before. If there
had been any, I might have noticed it. . . . When I
looked on the floor, I could see there was a stream of ink
that had splashed down in front of the desk, and also on
the floor. The ink had ruined my dress." The foregoing
is substantially all of the evidence produced by respondent.

Appellant called the cashier, and he in substance said
that he remembered the occurrence; that he did not over-
turn the ink bottle, but as soon 'as he discovered that the
ink was dripping down from the shelf or ledge near the
cashier's window he called upon a clerk to wipe it up. The
clerk referred to immediately responded, and he testified
that he placed some blotters on the dripping ink and called
the janitor of the building to come and wipe up the ink that
had dripped on the floor; that respondent's dress had already
been soiled with the ink when the cashier directed his at-
tention to the ink dripping on the floor.

Respondent's counsel first contended that the clerk's at-
tention was called to the dripping ink before respondent's
dress had been soiled; but on the hearing of the case, when
their attention was specifically directed to the witness' tes-
timony, they frankly conceded that his testimony was to the
effect stated above.

Is the foregoing testimony sufficient to support a finding
of negligence on the part of appellant? Counsel for re-
spondent very frankly conceded at the hearing that, unless
the evidence, when considered in its entirely, justified a find-
ing of negligence on the part of appellant, their client cannot
recover in this action. We think the evidence is
clearly insufficient to support a finding of negligence.     1, 2
What legal duty did appellant owe respondent as one
of its customers? It was its duty to exercise ordinary care
and diligence to provide and maintain a reasonably safe
place for ingress and egress to and from its place of business

for its customers, and to exercise the same degree of care and diligence to prevent injury to them and to their property while they were lawfully in its place of business or on its premises. Appellant, however, was not an insurer of the safety of its customers; nor was it required to avoid all accidents, either to them or to their property, at its peril. The respondent, therefore, was required to show that appellant in some way had omitted to exercise that degree of care and diligence for her safety stated above, and that by reason of such want of care her dress was injured as alleged. The law in this regard is well stated in a case simliar in principle to the one at bar by Mr. Justice Morton, who, in *Toland v. Paine Furniture Co.*, 175 Mass. 476, 56 N. E. 608, said:

"The plaintiff was bound to show by a fair preponderance of the evidence that the accident was due to negligence on the part of defendant. She was herself unable to tell what caused it."

In the case at bar there is not the slightest evidence with respect to who overturned the ink bottle, or how, or when it was overturned. There is, in truth, no evidence of just where the offending bottle was placed just before or at the time it was overturned. In view of the evidence, how could the appellant guard against an accident such as the over-turning of an ink bottle or ink well in use by the defendant's servants?

Counsel for respondent contend that negligence may be inferred in this case in view of the duty that the law imposes on appellant, but negligence must be deduced from facts. From what fact or facts, as they appear in this case, is it to be inferred? The doctrine is elementary that in cases where the maxim of *res ipsa loquitur* does not apply, negligence may not be presumed or inferred merely because an accident occurred. In this case all that is shown is that a bottle or well containing ink, in some way unknown, was overturned, and that the ink was spilled, and some of it dripped upon respondent's dress and damaged it. At most, therefore, the case falls within the familiar

doctrine that "when a plaintiff produces evidence that is consistent with an hypothesis that the defendant is not negligent, and also with one that he is, his proof tends to show neither." (*Ewing v. Goode*, (C. C.), 78 Fed. 444.)  Is it not just as reasonable to infer that the ink was accidentally spilled as to infer that it was negligently done?  Indeed, if we consider the evidence in its entirety and apply it most strongly in favor of respondent, yet the inference that the spilling of the ink was accidental is, in our judgment, much stronger than the inference that it was otherwise.  Under such circumstances a finding of negligence can only be based upon conjecture.  Mere conjecture, however, cannot support a finding of negligence.  We are clearly of the opinion that the evidence is such that reasonable men can arrive at but one conclusion, and that is that the spilling of the ink was purely accidental.  But if it were assumed that this were not so, the proof that appellant could have, by the most exacting care, avoided the injury, is wholly lacking.

The following cases are directly in point on the question of whether the evidence is sufficient to support a finding of negligence.  (*Toland v. Paine Furn. Co.*, 175 Mass. 476, 56 N. E. 608; *Reeves v. Fourteenth St. Store*, 110 App. Div. 735, 96 N. Y. Supp. 448; *Dudley v. Abraham*, 122 App. Div. 480, 107 N. Y. Supp. 97; *De Velin v. Swanson* (R. I.) 72 Atl. 388.)  The case at bar, in so far as the question of insufficiency of evidence is concerned, is not distinguishable from the case of *Rowbottom v. U. P. Coal Co.*, 117 Pac. 871.

The case of *Dent v. Grimm*, 65 App. Div. 81, 72 N. Y. Supp. 471, cited by respondent, is not in point.  That case was one where a customer was injured in passing over an incline, which he was required to do in order to transact the business in hand with the owner.  It was contended by the customer that the incline was not maintained in proper condition to pass over.  The court very properly ruled that whether the defendant was guilty of negligence in maintaining the incline in the condition in which it was, or whether the plaintiff was guilty of contributory negligence in pass-

ing over it, were questions for the jury. The other cases cited by respondent, namely, *Quirk v. Siegel-Cooper Co.*, 43 App. Div. 244, 60 N. Y. Supp. 228, and *Graham v. Bauland Co.*, 97 App. Div. 141, 89 N. Y. Supp. 595, are in principle precisely the same as *Dent v. Grimm, supra.*

From what has been said, it necessarily follows that the court erred in not directing the jury to return a verdict for appellant, as requested by it.

In view of the foregoing, it is unnecessary to pass upon the other assignments of error, since those all relate to appellant's requests to instruct the jury.

The judgment is reversed, and the cause remanded to the district court, with directions to grant a new trial. Appellant to recover costs on appeal.

McCARTY and STRAUP, JJ., concur.