CHARLES B. HECKEL, RESPONDENT, v. FORD MOTOR COMPANY, APPELLANT.

Submitted February 9, 1925—Decided March 16, 1925.

The manufacturer of an appliance that will become highly dangerous when put up to the uses for which it is designed and intended, because of defects in its manufacture, owes to the public a duty, irrespective of any contractual relation, to use reasonable care in the manufacture of such appliance, and such duty calls for and requires the exercise of reasonable care in applying reasonable tests to detect defects and deficiencies in the appliance.

On appeal from the Supreme Court.

For the appellant, *Theodore Rurode* and *David F. Edwards.*

For the respondent, *John Winans* and *Samuel Schleimer.*

The opinion of the court was delivered by

CAMPBELL, J. This is an appeal from a judgment, entered in the Supreme Court, in favor of respondent, upon a verdict rendered at the Union Circuit.

The action was against appellant and Eldred R. Crow, to recover damages for personal injuries and loss sustained by respondent through the alleged bursting of a pulley attached to a Fordson tractor, purchased by respondent from Crow shortly before the happening.

At the time of the happening, power from the motor of the tractor was being applied and transmitted to a circular saw by and through a belt running over a pulley attached to the tractor and over another pulley attached to the saw. At the saw, and as a part thereof, was a fly-wheel. The saw was distant about twenty-five (25) feet from the tractor. The saw, fly-wheel and saw pulley were not products of the appellant.

The tractor had been running but a short time when there was what was described as an explosion and respondent was

struck by a piece of metal and his arm, so injured as to require amputation. The tractor pulley was found to be broken, the gasoline tank and carburetor broken off and certain housing of the tractor broken. The fly-wheel of the saw was later also found to be broken.

There was testimony tending to show a defect in the tractor pulley; a dark or black place showing an old defect against a bright or white portion showing the fresh break.

There was also testimony tending to show that the initial difficulty was at the tractor pulley, in that immediately after the so-called explosion the belt jumped off the tractor pulley and the saw, with its fly-wheel still intact, continued revolving.

During the trial a nonsuit was directed in favor of the defendant, Crow, and the Ford Motor Company is the sole appellant.

There are five specific grounds of appeal.

*First.* Because the court denied the motion for a nonsuit. The grounds for such motion were:

1. That there was no proof of a contractual relation between the Ford Motor Company and the plaintiff.

2. Because there is no allegation that because the Ford Motor Company sold to a dealer it had any liability to an ultimate consumer.

3. Because there is no proof of any negligence by the Ford Motor Company.

*Second.* Because the court denied the motion to direct a verdict in favor of the Ford Motor Company.

The grounds for such motion were:

1. Because there is no evidence of any negligence of the Ford Motor Company.

2. As a manufacturer only it had no contractual relation with the plaintiff and owed him no duty growing out of such a relation.

3. There is no proof that the pulley or tractor was defective when it left the Ford Motor Company or when it was sold to Crow or when it was delivered to the plaintiff.

4. Because no cause of action has been made out against the Ford Motor Company.

5. Because, according to the uncontradicted evidence, the Ford Motor Company submitted the product to all of the inspections known to the trade and that was the most of defendant's duty which it owed to plaintiff.

There was no error in either the refusal to nonsuit or direct a verdict.

There was evidence from which the jury could find that the bursting of the tractor pulley was the proximate cause of respondent's injury.

There was also evidence from which the jury could find that there was a defect in the pulley—that is, the darkened metal in the break indicating an old break as against the bright metal showing a new break.

A contractual relation by appellant with respondent was not necessary to charge the former with responsibility.

The manufacturer of an article, not inherently dangerous, but which may become dangerous when put to the use for which it is intended, owes to the public the duty of employing care, skill and diligence in its manufacture and of using reasonable diligence to see that it is reasonably fit for the purpose for which it was intended.

In *Van Winkle* v. *American Steam Boiler Co.,* 52 *N. J. L.* 240, it was held: "In all cases in which any person undertakes the performance of an act which if not done with care and skill will be highly dangerous to the persons or lives of one or more persons known or unknown, the law *ipso facto* imposes a public duty: the obligation to exercise such care and skill."

This rule has been persistently and consistently followed in this state. *Styles* v. *Long Co.,* 70 *N. J. L.* 301; *Guinn* v. *Delaware and Atlantic Telephone Co.,* 72 *Id.* 276; *Piraccini* v. *Director General,* 95 *Id.* 114; *Republic of France* v. *Lehigh Valley Railroad Co.,* 96 *Id.* 25; *Barnett* v. *Atlantic City Electric Co.,* 87 *Id.* 29; *Tomlinson* v. *Armour & Company,* 75 *Id.* 748.

There was no contention that, at the time of the happening, the pulley was being put to any use other than that for which it was designed. The presumption was, and plaintiff had a right to assume, that it was reasonably safe to use it for such purposes. The breaking or bursting of the pulley coupled with evidence of a defect therein called upon the defendant to show what care it had used in its manufacture. This the defendant did by testimony showing the tests required in its factories during the different stages of manufacture of such pulleys; that the tests so employed were all that were known in the trade and business of manufacturing such appliances and that such tests properly applied would reasonably disclose defects in such products.

There was no evidence showing any other or further tests that could reasonably be made. As before stated it was for the jury to determine whether or not there was a defect in the pulley; whether or not the pulley did break or burst because of such defect, and whether the bursting so caused was the proximate cause of injury to the respondent. If the jury found in favor of the respondent upon all of these matters it still was for the jury to say whether the defect could have existed undetected and unknown to appellant if it had used reasonable care in applying the tests which it was testified were employed by it in the manufacture of the pulley. For these reasons the refusals to nonsuit and to direct a verdict in favor of the defendant were proper.

The third and fourth grounds of appeal are directed to the alleged error of the trial court's refusal to charge the following two requests, viz.—(1) "In the absence of a contractual relation between the Ford company and plaintiff, the Ford company is not liable for negligence in the manufacture of the tractor and pulley unless it fraudulently concealed defects known to it which would render the tractor and pulley dangerous;" and (2) "In the absence of a contractual relation between the defendant, Ford company, and plaintiff, the defendant having made ordinary inspection and tests for the purpose of discovering defects in its product, it

is not liable to plaintiff for any injury which he sustained because of defects in the manufactured product, except in case of fraudulent concealment of defects known to it which would render the manufactured product dangerous."

Both of these requests were properly refused.

The manufacturer of an appliance that will become highly dangerous, when put to the uses for which it is designed and intended, because of defects in its manufacture, owes to the public a duty, irrespective of any contractual relation, to use reasonable care in the manufacture of such appliance, and such duty calls for and requires the exercise of reasonable care in applying reasonable tests to detect defects and deficiencies in the appliance. This duty is not met by a showing that reasonable tests are required, but it must appear that such tests were applied and their application was made in a reasonably careful manner.

This, in substance, was the instruction of the trial court and perhaps, in parts, the instruction was more favorable to appellant than the foregoing rule demanded.

The last ground of appeal is directed to an alleged error in the following portion of the charge of the trial court: "If you find that there was a defective pulley; that this was a defective pulley and that it was this defective pulley that injured the plaintiff in this case, you have a right to consider whether or not the fact that it was allowed out shows whether they had such inspection as an ordinary prudent person would have had."

Appellant's complaint appears to be that this portion of the charge is inconsistent with the rest of the charge because the court had already instructed the jury that a manufacturer is not an insurer, and that negligence was not to be inferred from the fact that one article got by inspection and that the language complained of amounts to an instruction that the manufacturer is an insurer and that negligence is to be or may be inferred from the fact that one article out of thousands got by the inspection.

We do not put any such construction upon the language complained of. It amounts to no more than this: that, find-

ing a defective condition in the pulley, was that defect undetected by lack of reasonable care in applying the reasonable tests and inspections required in the exercise of reasonable care in the manufacture of the appliance to make it reasonably safe for use for the purposes for which it was intended. This portion of the charge must be read in connection with the balance of the charge and the language employed must be interpreted with respect thereto. We find therein no error.

The judgment below is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 16.

*For reversal*—None.