Madden, et ux *v.* The Great A. & P. Tea Co., Appellant.

Argued April 26, 1932.

Before
TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*John A. Metz,* and with him *W. C. McClure,* for appellant, cited: United States v. Ross, 92 U. S. 281; Douglass v. Mitchell's Executor, 35 Pa. 440; Zahniser et al., v. Pennsylvania Torpedo Company, 190 Pa. 350.

*William L. Jacob,* for appellees. There is an implied warranty that food sold for domestic consump-

tion is fit for that purpose and free from unwholesome and deleterious substances. Catani v. Swift and Co., 251 Pa. 52; Rozumailski v. Philadelphia Coca-Cola Beverage Company, 296 Pa. 114.

OPINION BY PARKER, J., October 10, 1932:

Plaintiffs, husband and wife, brought this action in trespass against the defendant alleging negligence on its part and sought to recover damages for an injury to the wife caused by the consumption of tea purchased from the defendant, containing a deleterious substance. The issues were submitted to a jury which found verdicts for the plaintiffs. The defendant, having appealed to this court, assigned as sole error the failure of the lower court to enter judgment for it n. o. v.

Mrs. Madden, one of the plaintiffs, testified that she purchased from the defendant at one of its retail stores one-half pound of mixed tea,—Oolong and Gunpowder; that one variety was taken from a can and the other from a bin with a scoop and mixed by the clerk and the mixture placed in a paper bag and sealed with glue paper; that she took the bag home and a short time later opened the seal, reached in the bag with her fingers twice and removed sufficient tea to make several cups; that she then took a can which she had previously bought from defendant for the purpose, wiped it out, dumped the tea into it, placed a tight lid on the can and set it in the cupboard; that she brewed several cups for the evening meal of which her son drank part of one and she consumed three, two with her supper and a third when she finished her dishes; that the first cup had a bitter or sour smell and she thought she had made it too strong; that the third cup was darker and "stronger in the taste;" that shortly after drinking the tea she was nauseated, became sick at her stomach, after going to bed she vomited violently and on the third day called a physician; that she was ill three months and had the attention of two physicians

part of the time. She further stated that on the second day she opened the can containing the tea and noticed a foul odor; that she called her husband who found a mouse in the tea; and that, in her words, "The mouse was all crushed and it had a green color. I think it would be dead about a week or ten days because it was sort of kind of dried up. It was getting sort of dried —maybe longer than that." She stated that at the same meal she partook of vegetable soup, veal cutlet, sliced peaches, an ear of corn and head lettuce, all of which she purchased from defendant that afternoon. Immediately after the mouse was discovered, it was taken to the manager of the store in the tea can and exhibited to him. One of the attending physicians called by the plaintiff testified that in his opinion the illness came from drinking the tea with the mouse in it. There was not any direct evidence of negligence on the part of the defendant, the plaintiff relying upon the inferences to be drawn from the presence of the dead mouse in the tea. Defendant offered evidence to show that the mouse was not in the tea when sold and further evidence to show the care that was taken to avoid the presence of foreign or deleterious substances in the tea.

It is contended by defendant that there was no evidence of negligence on the part of the defendant. This is the main question with which we are concerned. The jury by its verdict having found that the dead mouse was in the tea when purchased by Mrs. Madden, the finding is conclusive on us if based upon sufficient competent evidence. The tea was brewed very shortly after it was purchased and plaintiffs have offered evidence showing the care that was used to prevent the addition of any foreign matter after it came into her possession. In addition to this the condition of the mouse when found rebuts any reasonable inference that a live mouse got into the tea after the package was delivered by defendants to Mrs. Madden and it

is not within the bounds of reasonable inference to assume that it was placed designedly in the package. We are satisfied that there was sufficient competent evidence to form the basis of the finding by the jury that the mouse was in the package when delivered.

May we infer negligence from the presence of the foreign deleterious substance? The defendant produced evidence to show it was an importer of tea, receiving it in bulk, packing it in boxes, and preparing it for the trade, and was, therefore, more than a mere retailer, being for all purposes in exclusive control of the tea and its contents until it reached the consumer's hands. "The general rule is that where the sale of articles of food is for immediate consumption there is an implied warranty that the food is wholesome and fit for the purpose intended, irrespective of the seller's knowledge of disease or defects therein": Catani v. Swift & Co., 251 Pa. 52. "We think the sounder reasoning is in support of the theory that a sale of food or beverage impliedly warrants that it shall be free of a foreign matter which may be injurious to the well-being of the consumer. Nor do we see any just reason, from a public policy standpoint, as the health or human life may be involved, why sale of food or beverage intended for human consumption should not carry with it an implied warranty that it is suitable and wholesome": Nock v. Coca Cola Bot. Wks., 102 Pa. Superior Ct. 515, 519. "Those engaging in the business of manufacturing or compounding food or beverages for consumption must use a high degree of care to see that the food or beverage is free from foreign or deleterious substances that injuriously affect the user. All reasonable, scientific and up-to-date methods must be employed to obviate the presence of any such injurious substances, and, even where such methods are employed, where such substances get into the product, whose presence there might possibly be due to that uncertain human quality,—carelessness,—somewhere

along the line, the manufacturer is responsible to a member of the public injured thereby": Rozumailski v. Philadelphia Coca Cola Bottling Company, 296 Pa. 114, 116. Also see West v. Katsafanas, 107 Pa. Superior Ct. 118. "The burden which is thus thrown upon the defendant is not that of satisfactorily accounting for the accident, but merely that of showing that he used due care": Stearns v. Spinning Co., 184 Pa. 519, 523. Even though the defendant offered evidence uncontradicted to show that he was not negligent and made reasonable inspection, and there was no direct contradiction thereof, the plaintiff having shown the presence of the mouse in the tea, it remained for the jury to say whether the explanation offered by defendant indicated the use of proper care: Doud v. Hines, 269 Pa. 182, 186; Shaughnessy v. Director General, 274 Pa. 413, 416. There are no circumstances present in the instant case which would place any less burden upon the immediate vendor than upon a manufacturer. We are not concerned with a case where goods are sold in an original package as here the tea had been under the immediate control and supervision of the defendant from the time it was imported until it was delivered to the purchaser. We adopt the reasoning in the case of Rozumailski v. Phila. Coca Cola, supra. Before the tea left the hands of the defendant the mouse could have easily been discovered by inspection. A vendor of foods and beverages owes the duty of reasonable inspection of the commodity (at least where it is not in an original sealed package) before placing it on the market for consumption. He was for all purposes in exclusive control of the tea from the time it was imported until it reached the consumer's hands. As was said in the case to which we have just referred (p. 118): "It is a case where the accident proves its own negligent cause, and the jury would be permitted to infer negligence, as the court below instructed it, from the fact

that ground glass (here a mouse) had been found in the bottom of the bottle (here in the tea). The particular dereliction is not shown, nor was it necessary; the negligent act is demonstrated by showing glass in the bottom of the bottle (here mouse in the tea)."

Defendant further urges that the plaintiffs' case furnishes other causes which with equal show might have been productive of the injury, suggesting that it might have come from the veal or other articles consumed at the evening meal. It will be observed, however, that all of these provisions were purchased from the defendant and the jury were justified in assuming that they did not contain harmful ingredients, while the tea did have in it such deleterious substance. If there was any other cause to which the injury might in equal fairness be attributed, the jury ought not to be permitted to guess which occasioned the injury, but as was said in the case of Strobel v. Park, 292 Pa. 200, 207, the test is whether the circumstances are such as would satisfy a reasonable and well-balanced mind that the accident resulted from the negligence of the defendant. "It is not necessary for the plaintiff to exclude everything which the ingenuity of counsel may suggest as possibly causing or contributing to an accident": Gallivan v. Wark Co., 288 Pa. 443, 453.

Appellant further urges that recovery is barred by the wife's contributory negligence. It is true that when she drank the first cup of tea she detected a bitter or sour smell, but she added that she thought she had made it too strong or brewed it too long. Taking into account the various qualities of tea arising from its peculiar nature and differences that arise from the way in which it is prepared, we agree with the court below that it was not justified in saying as a matter of law that the plaintiff was guilty of contributory negligence, but such question was for the jury.

Another contention of the appellant requires attention. It complains that the jury was permitted to in-

fer that the mouse was in the paper bag when delivered because it was found in the can the next day; that then the jury was permitted to infer that the mouse so affected the tea brewed by Mrs. Madden that it nauseated her; and then was permitted to infer that it was the three cups of tea rather than the veal cutlet that caused her illness. It then argues that this is the drawing of an inference from an inference which in certain cases is not allowable. See United States v. Ross, 92 U. S. 281; Douglass v. Mitchell's Executor, 35 Pa. 440; Fanning v. Equitable Life Assurance Society, 264 Pa. 333. It would unduly extend this opinion to enter into a discussion of the cases in which an inference was not permitted to be drawn from an inference. We refer to the discussion of this subject by Professor Wigmore (Wigmore on Evidence, Sec. 41), and an article "Presumption built on Presumption" by the late Dean Trickett of the Dickinson School of Law in "The Forum," X, 123, March, 1906. As is stated by Professor Wigmore, the rule "must be taken as valid only for the particular evidentiary facts therein ruled upon." Outside the realms of pure mathematics all proofs are but a question of probabilities. See opinion by Chief Justice GIBSON in Com. v. Harman, 4 Pa. 269, 271. When in the proof of a particular fact we depend upon a succession of inferences or a chain of indefinite length the probability of a certain result following becomes so tenuous that it cannot be accepted. However, we do not understand the rule in Pennsylvania to be that only one essential element in a case can be made out by circumstantial evidence. In our opinion the rule relied upon by appellant has no application to the situation we are considering.

The judgment of the court below is affirmed.