284 P.2d 471

**Jack Aldon HEWITT, Plaintiff and Appellant,**

**v.**

**The GENERAL TIRE and RUBBER COM-PANY, a corporation of Ohio, Defendant and Respondent.**

**No. 8038.**

Supreme Court of Utah.

May 24, 1955.

Woodrow D. White, Salt Lake City, for appellant.

Stewart, Cannon & Hanson, Salt Lake City, for respondent.

McDONOUGH, Chief Justice.

Plaintiff, who operates a service station, suffered injury to his hand when a tire, manufactured by defendant, exploded as he was mounting it on a truck wheel. On the trial of the case, the jury returned a verdict for the plaintiff in the amount of $14,889; whereupon the court ruled upon a motion for a directed verdict, which it had previously taken under advisement, and set aside the verdict and judgment and gave judgment no cause of action in favor of the defendant.

The tire which exploded had been in storage for some time in the warehouse of the Granite Furniture Company, for whom plaintiff was mounting the tire, but it was concededly a new tire. Plaintiff made a cursory examination of the tire while cleaning it of cobwebs and dirt, but did not notice any defect or scuffing on the exterior of the tire. He inflated the tire and tested the pressure with the tire gauge which registered between 30 and 34 pounds. He connected the air hose to the valve stem a second time, as he intended to inflate the tire to 40 pounds, and within a "matter of split seconds" the explosion occurred. It is plaintiff's theory that the explosion was the result of a defective beading—that is, that the materials or the workmanship in that part of the tire which hugs the rim and prevents the inner tube from becoming exposed were dangerously irregular and that the defect could have been discovered upon reasonable inspection.

It is well settled that mere proof of an injury to plaintiff will not justify a verdict or judgment imposing liability upon the defendant and if the evidence does not show any negligence on the part of the defendant, there can be no recovery, regardless of the fact that plaintiff was

not negligent. Quinn v. Utah Gas & Coke Co., 42 Utah 113, 129 P. 362, 43 L.R.A., N.S., 328; Rogers v. Rio Grande Western Railroad Co., 32 Utah 367, 90 P. 1075, 125 Am.St.Rep. 876. The cases following MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696 have established a duty owed by a manufacturer of an instrumentality, which may become dangerous if improperly made, to any member of the public using it for the purpose and in the manner for which it was made. Northern v. General Motors Corporation, 2 Utah 2d 9, 268 P.2d 981; Hooper v. General Motors Corporation, Utah, 260 P.2d 549. However, plaintiff must prove a violation of that duty in order to recover; and the lower court held by its judgment on a directed verdict that he did not produce evidence to show such violation. On appeal from a directed verdict, it is fundamental that we review the evidence in the light most favorable to the losing party. Finlayson v. Brady, Utah, 240 P.2d 491.

In Hooper v. General Motors Corporation, supra [260 P.2d 551], and followed in Northern v. General Motors Corporation, supra, the proof necessary to recovery in a case similar to this is stated to be:

"Thus, to impose liability on an assembler of an automobile certain necessary elements must be made out. Plaintiff is required to show: (1) A defective wheel at the time of automobile assembly; (2) Such defect being discoverable by reasonable inspection; (3) Injury caused by failure of the wheel due to its defective condition."

The direct evidence which can be produced on either side in a case such as this is limited by the very nature of the action. Generally, plaintiff can only testify to the condition of the item after the accident and defendant has little opportunity to prove contributory negligence against the plaintiff. For this reason, the circumstantial evidence giving rise to certain inferences becomes of great importance. In the Hooper case, supra, it is said:

"It may be that the mere separation of the spider from the rim, standing as an isolated fact, would be an insufficient factual basis for an interference (sic) that the wheel was defective at the time it was assembled on the truck. However, when viewed in relation to other evidentiary facts—namely, the worn shiny spots on the undersurface of the wheel rim; the expert testimony to the effect that such shininess indicated smoothness and wear over a considerable length of time, * * *; the age of the truck; the fact that it had gone but 6700 miles; the fact that it had no record of prior damage; the description of the mishap by plaintiff * * *; then the fact of rim-spider separation may have provided the requisite force to tip the scales in favor of plaintiff. Certainly, reasonable men from the cumulative factual

total could infer, and with the consideration of rim-spider separation may have inferred, that the wheel was defective at the time of assembly."

The question which we confront in the present case is whether there is evidence which would indicate that some flaw in the tire, resulting from some act or omission during the manufacture, existed prior to the explosion and was the proximate cause of it, and which would be discoverable upon reasonable inspection.

It has been suggested in decisions from numerous jurisdictions, and sometimes actually enforced, that a fact desired to be used circumstantially must itself be established by direct evidence and that an inference cannot be based upon an inference.[1] Professor Wigmore, 1 Wigmore on Evidence, Sec. 41, criticises this view:

"There is no such orthodox rule; nor can be. If there were, hardly a single trial could be adequately prosecuted. For example, on a charge of murder, the defendant's gun is found discharged; from this we infer that he discharged it; and from this we infer that it was his bullet which struck and killed the deceased. Or, the defendant is shown to have been sharpening a knife; from this we argue that he had a design to use it upon the deceased; and from this we argue that the fatal stab was the result of this design. In these and innumerable daily instances we build up inference upon inference, and yet no Court (until in very modern times) ever thought of forbidding it. All departments of reasoning, all scientific work, every day's life and every day's trials, proceed upon such data. The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon."

"The fallacy has been frequently repudiated in judicial opinions. * *"[2]

Professor Wigmore cites the case of New York Life Ins. Co. v. McNeely, 52 Ariz. 181, 79 P.2d 948, as demonstrating the line which may be drawn to assuage the distrust of inference upon inference and distinguish between mere conjecture and valid inference:

1. Rowe v. Alabama Power Co., 232 Ala. 257, 167 So. 324; State v. Kelly, 77 Conn. 266, 58 A. 705; Ferguson v. Billups, 244 Ky. 85, 50 S.W.2d 35; Doran v. United States Building & Loan Ass'n, 94 Mont. 73, 20 P.2d 835; St. Mary's Gas Co. v. Brodbeck, 114 Ohio St. 423, 151 N. E. 323.

"The principle which is applied by the average man in his own private affairs usually is that no matter how many inferences are piled on each other, it is only necessary that each successive inference should be more probable than any other which might be drawn under all the circumstances. The Courts, however, have always insisted that the life, liberty and property of a citizen should not be taken away on possibilities, conjectures, or even, generally speaking, a bare probability. In criminal cases, they demand that when a conviction is to be based on a chain of inferences, each and every link in that chain must exclude every other reasonable hypothesis. In civil cases, involving only property rights, the rule is not so strict, and it is sufficient, if the ultimate fact is to be determined by an inference from facts which are established by direct evidence, that it be more probable than any other inference which could be drawn from the facts thus proven. But when an inference of the probability of the ultimate fact must be drawn from facts whose existence is itself based only on an inference or a chain of inferences, it will be found that the Courts have, with very few exceptions, held in substance, although usually not in terms, that all prior links in the chain of inferences must be shown with the same certainty as is required in criminal cases, in order to support a final inference of the probability of the ultimate fact in issue * * * the prior inferences must be established to the exclusion of any other reasonable theory rather than merely by a probability, in order that the last inference of the probability of the ultimate fact may be based thereon. This rule is not based on an application of the exact rules of logic, but upon the pragmatic principle that a certain quantum of proof is arbitrarily required when the courts are asked to take away life, liberty or property."

Applying this test to the instant case, we begin with the fact that the tire burst causing the injury. As was above stated, this alone will not raise an inference of defendant's negligence, for ruling out, as this case permits, accident without fault or an act of God, there remain three equally valid inferences, viz., plaintiff was negligent, the accident was caused because of the interference of a third party, or defendant was negligent.

Upon plaintiff's evidence, then, could the jury reasonably conclude that he, himself, was not negligent?

X-rays of the tire were introduced showing that all of the strands of wire, or nearly all of them, in the bead were broken, but they revealed no clue as to the cause of the break. In an experiment conducted by defendant, a tire of this type withstood

a pressure of 155 pounds before the bead wires broke causing an explosion. Together with plaintiff's direct testimony as to careful handling of the tire and inflation to less than 40 pounds, the jury had before them the evidence of his long experience in work of this type, from which they might conclude that he would not apply enough excessive air pressure to explode the tire.

Plaintiff produced the results of an experiment wherein the bead of a new tire was subjected to manual pounding with instruments more capable of producing force than the rubber mallet used in mounting the tire. After 30 minutes of such pounding, the witness testified, the casing was damaged but x-rays revealed that the wire remained intact. With this evidence and the stipulation that the tire was new, the jury might reasonably rule out the possibility that plaintiff had himself damaged the bead or that the bead would be damaged in the normal course of handling from manufacturer to dealer and from dealer to Granite Furniture Company to plaintiff.

Plaintiff's witness, Dr. Linford, a physicist, testified that inasmuch as there was no break in the casing, it was his opinion that the explosion occurred as a result of the bead slipping off the edge of the rim and that the escaping air pressure would exert force sufficient to lift a man of plaintiff's size off the ground, even though the tire contained only 35 pounds of air. Assuming, as the jury may have found, plain-tiff's evidence of proper mounting of the tire and the introduction of only 35 pounds of air, Dr. Linford was of the opinion that the explosion was caused by a weakness in the bead.

On the experimental tire which was purposely exploded, the bead broke at approximately the same spot as in the tire causing the injury and in the beading of both tires, defendant's expert testified, the wire showed a reduction in diameter at the point of break. Plaintiff's expert, however, was unable to identify any narrowing near the break in the tire involved in the accident. Like the tire in question, also, the experimental tire showed no sign of damage to the fabric. After the bead of the experimental tire was broken with a pressure of 155 pounds, the tire was again filled to 53 pounds before the inner tube slipped over the bead and exploded. Plaintiff's witness, a tire salesman, was of the opinion that if 35 pounds of air were introduced into a tire with a broken bead the tire would blow.

The inferences to be drawn from this demonstrative evidence and expert testimony may not be so clear that we could say that they would meet the test outlined in the New York Life Ins. Co. case, supra, necessary to support a further inference, if they stood alone. However, on the question of plaintiff's negligence, these inferences merely buttress plaintiff's testimonial evidence and are thus adequate to support the final inference that either defendant

was negligent or that the bead was damaged by a third person.

Secondly, we consider whether plaintiff's evidence is · sufficient to exclude the hypothesis that a third person may have damaged the tire before it came into plaintiff's hands. The tire was manufactured in October, 1950, in Waco, Texas. It was received by the Granite Furniture Company in December, 1950, through a purchase from a dealer, the Wheeler General Tire Company. It was kept in the basement of the Granite Furniture store upon a rack designed for that purpose until it was delivered to plaintiff for mounting on the truck wheel. The employee who delivered the tire testified that nothing unusual had occurred to injure the tire during the course of delivery. The tire was new and showed no signs of having been previously mounted, the marks of the tire molds were still prominent and undisturbed.

■ The time when the accident and resulting injury occurred, whether soon or long after the sale and delivery of the article causing the injury, is of importance upon the question of its dangerous quality when sold and delivered. Huset v. J. I. Case Threshing Machine Co., 8 Cir., 120 F. 865, 61 L.R.A. 303; Statler v. George A. Ray Mfg. Co., 195 N.Y. 478, 88 N.E. 1063; Heckel v. Ford Motor Co., 101 N.J.L. 385, 128 A. 242, 39 A.L.R. 989; Lynch v. International Harvester Co., 10 Cir., 60 F.2d 223; Ford Motor Co. v. Wolber, 7 Cir., 32 F.2d 18. ··

The jury was entitled to consider, in addition, the results of tests and experiments conducted and the inferences arising therefrom. Defendant's tests on similar tires demonstrated that the tire beading would break upon an induction of 155 pounds air pressure or an applied pulling pressure of 5,600 pounds. The jury might properly find it to be beyond reason that a third person would thus injure the tire. Had the bead been broken in some other conceivable manner, the casing of the tire would not have remained intact. Plaintiff's experiment of pounding the bead with heavy implements for a period of one-half hour and failing to break the bead, although the rubber was severely damaged, demonstrates the further unlikelihood of this occurrence. There was no evidence of rough handling by persons who had intermediate control of the tire and there was evidence that the bead of the tire would not deteriorate under storage conditions. Thus, the jury was justified in excluding the possibility of damage by a third person on the basis of direct evidence and circumstantial evidence pointing to that sole conclusion.

■ A manufacturer is liable when he fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, involves unreasonable risk to those who lawfully use it in a manner and for a purpose for which it is manufactured. Restatement of Torts, Secs. 394 to 398. Defendant presented detailed evidence as to its procedures in manufacture

and inspection of tires but, of course, could not show that this particular tire was correctly made or properly inspected. A jury question was presented as to whether or not defendant exercised the proper amount of care and the jury concluded that it did not.

The present case might be likened to the cases involving exploding bottles. Some of these cases have been decided on the principle of res ipsa loquitur, [3] whereas, others have been allowed to go to the jury upon the circumstantial evidence of 1) a short time between the injury and the time when the item left the defendant's control, 2) the type of break, 3) experiments and expert opinion, 4) no intermediate rough handling and 5) no negligence on the part of plaintiff. [4] In these cases, evidence of defendant's care in manufacture was also submitted for the jury's determination of whether or not defendant had met his duty of care in manufacture and inspection.

Under the circumstances, here present, defendant's negligence or lack of negligence was properly a question of fact for the jury, as were the questions relating to damages. The judgment upon the directed verdict is set aside and the judgment upon the jury verdict is reinstated. Costs to appellant.

CROCKETT and WADE, JJ., concur.

NELSON, District Judge (concurring in the result).

I do not subscribe to all that Mr. Chief Justice McDONOUGH has said on the subject of inference, nor do I agree with the conclusion that he apparently has reached on that subject.

I do agree, however, that under the evidence received in this case, the defendant's negligence or lack of negligence was properly a question of fact for the jury, as were the questions relating to damages.

I concur in the decision, "The judgment upon the directed verdict is set aside and the judgment upon the jury verdict is reinstated. Costs to appellant."

HENRIOD, Justice.

I dissent. The main opinion correctly asserts that the burden of proving defendant's negligence is on plaintiff. It seems to me that it then departs from the very rule it announces and says, in substance and effect, and with the aid of inferences that since there is no evidence of contributory

---

3. Payne v. Rome Coca-Cola Bottling Co., 10 Ga.App. 762, 73 S.E. 1087; Grant v. Graham Chero-Cola Bottling Co., 176 N. C. 256, 97 S.E. 27, 4 A.L.R. 1090; Stolle v. Anheuser-Busch, Inc., 307 Mo. 520, 271 S.W. 497, 39 A.L.R. 1001.

4. Colyar v. Little Rock Bottling Works, 114 Ark. 140, 169 S.W. 810; Willey v. Mynderse, 165 App.Div. 620, 151 N.Y.S. 280; Macres v. Coca-Cola Bottling Co., 290 Mich. 567, 287 N.W. 922.

362

negligence, no evidence of negligence by third persons, and no showing by defendant that the latter tested this particular tire, the defendant just simply must have been negligent.

In support of this result (which, so far as this record is concerned, seems to me to relieve the plaintiff of the burden of proving defendant's negligence and places upon the latter a burden of proving non-negligence), MacPherson v. Buick Motor Co. is cited. But there, as is not the case here, there was *real* evidence, beyond mere inference or conjecture, of not only a defect, but of a defect that "could have been discovered by reasonable inspection, *and that inspection was omitted*", [217 N.Y. 382, 111 N.E. 1051] as stated by Mr. Justice Cardozo. (Italics supplied.) In the instant case there was no proof that any inspection was omitted.

From the time this tire was manufactured until the accident, about a year and a half expired, during which time anything could have happened which may have resulted from any number of circumstances or persons. If we are to infer negligence on the part of the defendant because there is no proof that plaintiff was negligent, and because no evidence was produced that a third party was negligent, it would seem just as sensible to infer that the defendant, a nationally known firm with an excellent reputation for manufacturing safe tires, was *not* negligent, because there was no proof that it did not inspect the tire. In the

writer's opinion, the record in this case shows no facts produced by the plaintiff that will either sustain the burden of proving that the defendant was negligent or did anything that violated any duty which the latter owed to the former, or that would give rise to the inference which the majority opinion, by way of ipse dixit, has raised.

In my opinion, the decision in this case virtually makes a manufacturer of tires or anything else an insurer for the safety of the consumer, where such consumer can show freedom from contributory negligence and point to facts from which an inference might be drawn that third persons more likely than not did nothing to produce a defect in the article, without any real evidence that the manufacturer was negligent or violated any duty toward the consumer. It seems that such a conclusion relieves plaintiff from the burden of proving defendant's negligence and requires defendant to prove non-negligence, since plaintiff's lack of contributory negligence cannot prove defendant's negligence, and the case would be rare where a plaintiff could not present facts from which an inference could be drawn that third parties had nothing to do with the injury, and it has never been the duty of the defendant to ferret out third parties affirmatively to prove non-negligence on his part. This very case illustrates the facility with which an inference may be said to have been created. To raise the inference that third

parties could not have made the tire defective, the majority opinion points to tests *made by the defendant* on other tires that would break at 155 pounds pressure, which in my opinion raises no such inference at all. After stating that such fact points to an inference that third persons had nothing to do with the defect, the majority opinion then says that "Had the bead been broken in some other conceivable manner, the casing of the tire would not have remained intact." The inconsistency of this statement seems evident when it is realized that the bead must have been broken in some other manner, else the plaintiff would not have been injured when he applied but 35 pounds pressure, and if the quoted statement of the majority opinion is correct that the casing would not have remained intact, the casing in this case would not have been intact and the plaintiff easily could have observed such condition. Other matters which the majority opinion says help raise the inference that third persons had nothing to do with the defect, were *absence* of evidence of rough handling by third persons, and *absence* of evidence that the bead would deteriorate under certain storage conditions. How such absence of evidence can raise any inference is difficult to understand. It is unlikely that the plaintiff would come forth with damaging evidence if he had it, and the defendant ordinarily would not have access to any evidence of handling by third persons, and besides has no duty to produce it, since plaintiff is required to prove that defendant was negligent,—not the defendant to prove his non-negligence.

Although the majority opinion concludes that the jury was justified in *"excluding the possibility of damage by a third person"*, so far as I can see, such conclusion is a gratuity not predicated on the facts, and it would seem as sensible to me to infer that third persons had nothing to do with any defect if there were a complete absence of evidence as to the tire's manufacture, transportation, storage, handling and use. But such absence of evidence certainly could not relieve plaintiff of his burden of proof, nor impose liability on a defendant.

In my opinion, the decision here is difficult to square with our recent case of Matievitch v. Hercules Powder Co., 3 Utah 2d 283, 282 P.2d 1044.

WOLFE, C. J., being disqualified did not participate in the hearing of this cause.