37 N.J. Super. 494 (1955)
117 A.2d 620
EDWARD ANTON NATHAN, AN INFANT, BY HIS GUARDIAN AD LITEM, ET AL., PLAINTIFFS-RESPONDENTS,
v.
ELECTRIGLAS CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 22, 1955.
Decided November 2, 1955.
*496 Before Judges DAVIDSON, SPEAKMAN and PINDAR.
Mr. Robert R. Daly argued the cause for appellant (Robert O. Bentley, Jr., attorney).
Mr. Julius E. Kramer argued the cause for respondent (Mr. Harold Jacobs, attorney).
The opinion of the court was delivered by PINDAR, J.S.C. (temporarily assigned).
Defendant appeals from judgments entered upon the verdicts of a jury in the Bergen County Court. Plaintiff Edward Anton Nathan, an infant (hereinafter designated Edward), was awarded the sum of $15,000 for personal injuries, and plaintiffs Albert L. Nathan and Norma Nathan (hereinafter designated parents), the sum of $5,000 as consequential damages.
The complaint in the first count charges that defendant-producer of a certain electric fixture, marketed as "Electriglas Thermolite," had the duty to exercise reasonable care in the manufacture thereof, but that the said fixture was defective, improperly made and carelessly and negligently manufactured by defendant; that upon installation in the bedroom of Edward, while in use and operation the fixture "developed a fault which caused molten glass therefrom to fall from its location" upon the crib and Edward, seriously injuring him. The second count demands that the parents be compensated for resulting medical and hospital expenses for Edward, as well as for deprivation of his earnings and services now and in the future.
By answer defendant admitted that it manufactured and marketed the fixture aforementioned and that it was under a duty to exercise reasonable care, but denied careless and negligent manufacture as charged, including any and all liability. As separate defenses defendant set forth: (a) if a fault developed the result was not because of manufacture, but from the manner of installation by someone other than defendant for which faultiness defendant is not liable; (b) if a fault developed the result was from improper treatment, *497 installation, maintenance or use by plaintiffs or their servants, agents or employees, or by a person, firm or corporation other than defendant, without liability to it; and (c) that defendant owed no duty or obligation to plaintiffs, in that no privity existed between defendant and plaintiffs, reserving the right to move for dismissal under failure of complaint to state a legal cause.
It is here noted that upon completion of plaintiffs' case defendant moved for a dismissal "on the ground that there had been a failure to prove a prima facie case." That motion was denied. Thereupon, defendant closed its case and the matter was submitted to the jury, who rendered the aforestated verdicts.
Supported by long-settled law, defendant's motion to dismiss admitted and extended to plaintiffs the benefit of all legitimate inferences logically deductible from their factual proof to support a prima facie case.
Recent reiteration of the above related law is expressed by our Supreme Court in an opinion by Chief Justice Vanderbilt in O'Donnell v. Asplundh Tree Expert Co., 13 N.J. 319 (1953). There the court reversed the entry of involuntary judgments of dismissal, and, 13 N.J., at page 328, said:
"In the absence of statutory directives to the contrary, negligence is not presumed, but must be established by competent proof, Callahan v. National Lead Co., 4 N.J. 150, 153 (1950); and where fair-minded men might honestly differ as to the conclusions to be drawn from the proofs, the question at issue must be submitted to the jury, Antonio v. Edwards, 5 N.J. 48, 52 (1950). And where, as here, we are concerned with a judgment of involuntary dismissal, the court must accept as true all the evidence that supports the position of the party against whom the motion is made, and it must give him the benefit of all the inferences in his favor that may logically and legitimately be drawn therefrom, McKinney v. Public Service Interstate Transportation Co., 4 N.J. 229, 243 (1950)."
After denial of defendant's motion the uncontradicted record was transmitted to the jury as triers of the fact. It then became the legalistic province of the jury to weigh the proof. In that respect it was the indubitable function *498 of the jury to accept or reject the credibility of the evidence and belief of the testimony. Reserved to them was the right to conclude that defendant's negligence was justifiably probable as distinguished from the possibility of such negligence. Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, at page 141 (1951). The record here adequately supports a just probability of defendant's tortious liability.
From the undisputed evidence sub judice the jury could with complete propriety have found that: the pertinent fixture was manufactured and delivered by defendant; its intended function, upon installation, was to produce by means of electricity light and heat; being installed (in the manner related in the record) and put to purposeful use a fault developed in the fixture which caused molten glass to fall upon the bed clothes in a crib wherein Edward (about 16 months of age) was sleeping; the molten glass set fire to the blankets with resultant injuries to the child; the probable cause of said fault was chargeable to defective manufacture, described as a "hazardous type of construction." The last stated factual circumstance was evident upon a weighing of the testimony of Michael Prowsner, an expert engineer called by plaintiffs.
Defendant strenuously urges several objections to the competency and sufficiency of plaintiffs' evidence but we are constrained to conclude all of them lack merit. As to each item the record proof is susceptible of belief and acceptance by the jury in favor of plaintiffs, and against defendant, which was their undoubted determination.
Defendant contends: Firstly, that the fixture was obtained solely for testing during which the injury occurred and as Edward unwittingly was exposed to the test, defendant was not liable. But there was contradictory proof as to those contentions. Even if defendant's contention as to the testing of the apparatus be accepted as a fact such undertaking was directed to the quality for producing heat, not with relation to safeness. Secondly, plaintiffs were required to prove clear negligence and carelessness in manufacture. While such was the duty of plaintiffs it was fully sustained by the uncontroverted *499 record. Finally, may the doctrine of res ipsa loquitur apply where the product was delivered solely for the purpose of testing during which period the manufacturer (defendant) had no control? However, the significant fact is that plaintiffs' cause is not premised on the asserted doctrine and such could not therefore be a relevant matter of defense sub judice. Moreover, it is clearly evident that the accident at bar occurred while the particular fixture was installed and functioning for the purpose manufactured and presumed to be reasonably safe when put to its designated use. MacPherson v. Buick Motor Co., 217 N.Y. 382, 385, 111 N.E. 1050, L.R.A. 1916F, 696 (Ct. App. 1916); Heckel v. Ford Motors Co., 101 N.J.L. 385, 387 (E. & A. 1925); O'Donnell v. Asplundh (supra).
The Heckel case, supra, is singularly in point. There a pulley attached to a tractor (manufactured by defendant, Ford Motor Co.) broke while in use under motor power applied to a fly wheel and by means of a belt transmitter from the tractor to a circular saw. While so operating a described explosion occurred and a piece of metal struck plaintiff. The tractor pulley and other parts were found broken. Testimony tendered showed a defective pulley. At the close of plaintiff's case and later the defendant's case respective motions to non-suit and for a directed verdict were denied as to the manufacturer. The grounds for said motions were comparable to those urged sub judice. Upon appeal the jury verdict for plaintiff was affirmed. At page 387 of 101 N.J.L. the appellate court said:
"There was evidence from which the jury could find that the bursting of the tractor pulley was the proximate cause of respondent's injury. There was also evidence from which the jury could find that there was a defect in the pulley; that is, the darkened metal in the break indicating an old break as against the bright metal showing a new break. A contractual relation by appellant with respondent was not necessary to charge the former with responsibility.
The manufacturer of an article, not inherently dangerous, but which may become dangerous when put to the use for which it is intended, owes to the public the duty of employing care, skill *500 and diligence in its manufacture and of using reasonable diligence to see that it is reasonably fit for the purpose for which it was intended.
In Van Winkle v. American Steam Boiler Co., 52 N.J.L. 240, it was held in cases where an act is highly dangerous, if not done with care and skill, `to the persons or lives of one or more persons known or unknown, the law ipso facto imposes a public duty: the obligation to exercise such care and skill.'"
Also, at page 388 of 101 N.J.L. it was said:
"There was no contention that, at the time of the happening, the pulley was being put to any use other than that for which it was designed. The presumption was, and plaintiff had a right to assume, that it was reasonably safe to use it for such purposes. The breaking or bursting of the pulley, coupled with evidence of a defect therein, called upon the defendant to show what care it had used in its manufacture. This the defendant did by testimony showing the tests required in its factories during the different stages of manufacture of such pulleys; that the tests so employed were all that were known in the trade and business of manufacturing such appliances, and that such tests properly applied would reasonably disclose defects in such products."
It is most significant to notice that in the matter under consideration by us the defendant withheld all showing of any testing, including if any were undertaken that the defect described in the proofs here would not have been disclosed.
We perceive no error in the submission of the case to the jury or in their verdicts. Judgments affirmed.